# Illinois Official Reports

## Appellate Court

***Palm v. Holocker*, 2017 IL App (3d) 170087**

| | |
|---|---|
| Appellate Court Caption | SCARLETT PALM, Plaintiff-Appellee, v. RUBEN HOLOCKER, Defendant (Karl Bayer, Contemnor-Appellant). |
| District & No. | Third District<br>Docket No. 3-17-0087 |
| Filed | December 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Marshall County, No. 16-L-5; the Hon. Thomas A. Keith, Judge, presiding. |
| Judgment | Reversed in part and vacated in part; cause remanded. |
| Counsel on Appeal | Daniel E. Compton and Karl E. Bayer, of Compton Law Group, of Elgin, for appellant.<br><br>Philip M. O'Donnell and Christopher H. Sokn, of Kingery Durree & O'Donnell, Associates, of Peoria, for appellee. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred with the judgment and opinion. |

**OPINION**

¶ 1 Scarlett Palm filed a personal injury lawsuit against Ruben Holocker on June 22, 2016. Contemnor, Karl Bayer, represented Holocker. Contemnor invited civil contempt to challenge the circuit court's discovery order that compelled Holocker to answer written discovery. He argues that Holocker's statutory physician-patient privilege (735 ILCS 5/8-802 (West 2016)) protects his private medical information from discovery unless he affirmatively places his physical or mental health at issue. Palm counters that the physician-patient privilege does not apply in civil cases where the defendant's physical or mental health is relevant to the case; the statute does not require the defendant-patient to affirmatively place his or her health at issue. We agree with contemnor. We reverse the circuit court's discovery order and vacate its contempt order.

¶ 2                                                    BACKGROUND

¶ 3 Palm's complaint alleged that on October 18, 2014, Holocker struck Palm, a pedestrian, with his vehicle at a crosswalk in Lacon. Palm alleged that Holocker failed to keep a proper lookout, failed to stop at a stop sign, and failed to yield the right-of-way to a pedestrian.

¶ 4 Holocker's answer admitted that his vehicle struck Palm; however, he denied liability. He filed an affirmative defense, which claimed that Palm improperly crossed the street, failed to keep a proper lookout, and was under the influence of drugs or alcohol when she crossed the street. Holocker further alleged that Palm's negligence rendered her 50% or more at fault for her injuries. Palm denied Holocker's allegations.

¶ 5 During initial discovery, Palm sent Holocker the motor vehicle interrogatories provided in the appendix to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007). Interrogatory No. 20 of the Motor Vehicle Interrogatories to Defendants asks:

"20. Do you have any medical and/or physical condition which required a physician's report and/or letter of approval in order to drive? If so, state the nature of the medical and/or physical condition, the physician or other health care professional who issued the letter and/or report, and the names and addresses of any physician or other health care professional who treated you for this condition prior to the occurrence." Ill. S. Ct. R. 213, Appendix.

¶ 6 In response, Holocker disclosed that he needed a letter of approval for "diabetic reasons." He also disclosed the physician who writes his letters, Dr. Nau, and admitted the Secretary of State once suspended his license when Dr. Nau "failed to sign [a] medical authorization."

¶ 7 Holocker objected to the two ensuing interrogatories. They requested Holocker to:

"21. State the name and address of any physician, ophthalmologist, optician or other health care professional who performed any eye examination of you within the last five years and the dates of each such examination.

22. State the name and address of any physician or other health care professional who examined and/or treated you within the last 10 years and the reason for such examination and/or treatment." Ill. S. Ct. R. 213, Appendix.

¶ 8 Holocker's objections claimed that these interrogatories "violate[ ] HIPAA, doctor-patient privilege, and the Defendant has not placed his medical condition at issue in this matter."

¶ 9     Palm filed a motion to compel Holocker's responses. At the hearing on September 20, 2016, Palm's counsel argued that Holocker's abilities to see and drive "are at issue in this case because he drove his vehicle into a pedestrian." Contemnor argued that Holocker's physician-patient privilege protects his private health information, regardless of its relevance, unless he affirmatively places his health at issue. Alternatively, contemnor stipulated that Holocker possessed a valid license when the collision occurred; his medical condition was irrelevant because the Secretary of State legally permitted him to drive. The court granted Palm's motion and ordered Holocker to answer the interrogatories. Over contemnor's objection, the court also entered a Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 1320d *et seq.* (2012)) order that applied to both Palm and Holocker. Palm's counsel sent Dr. Nau and the Secretary of State subpoenas requesting Holocker's medical records pursuant to the HIPAA order.

¶ 10     Despite the court's order, Holocker refused to respond to Palm's interrogatories. Contemnor informed Palm's counsel that he was "simply protecting [his client's] important natural right to privacy." Palm filed a motion requesting sanctions. She asked the court to strike Holocker's denial of liability, enter a default judgment, and award attorney fees.

¶ 11     At the hearing on January 4, 2017, contemnor again argued that Holocker's privilege protects his medical information regardless of its relevance to the case. Alternatively, he argued that fact issues, such as whether Holocker looked in Palm's direction before the collision, precluded any determination as to the relevance of Holocker's vision or other medical conditions. Palm again argued that Holocker's health and vision were relevant to the case. Her counsel cited Marshall County public records showing Holocker had "seven or eight" prior collisions and received "a dozen traffic citations *** in the last 20 years."

¶ 12     The court found that Palm had "legitimate reasonable cause to believe that there could be some sight problems here that could have been related to this accident, and [she's] got a right to look for that." The court held Holocker's counsel in civil contempt. The contempt order imposed a $5-per-day fine until contemnor purged his contempt by submitting Holocker's interrogatory responses to Palm's counsel. This appeal ensued.

¶ 13                          ANALYSIS

¶ 14     Contemnor appeals the court's civil contempt order pursuant Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). Rule 304(b)(5) makes contempt orders appealable without a special finding. Although discovery orders are not ordinarily appealable, litigants may test the correctness of a discovery order through contempt proceedings. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). In such cases, "[r]eview of the contempt finding necessarily requires review of the order upon which it is based." *Id.* (citing *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 189 (1991)).

¶ 15     The discovery and contempt orders at issue address the two interrogatories to which Holocker objected. However, neither party's brief addressed whether the interrogatories seek privileged information. Both parties briefed and argued whether the privilege applies at all in this case, not whether the privilege specifically applies to the two interrogatories. Palm intended to obtain Holocker's medical records from medical providers he disclosed in his responses. If the privilege applies, the interrogatories are pointless; Palm may not obtain Holocker's medical records regardless of who treated him or when he received treatment.

¶ 16     We are dutifully cognizant of our supreme court's expectation that appellate courts observe judicial restraint. See *People v. White*, 2011 IL 109689, ¶ 153. However, if we limit our review to the two interrogatories in this case, our decision would resolve nothing. The issues would not change, and the parties would simply raise the same arguments in a second appeal after contemnor sought a protective order or other injunctive relief to protect Holocker's medical records from Palm's subpoenas (see Ill. S. Ct. R. 307(a)(1) (eff. Jan. 1, 2016); *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214 (2000); *Bush v. Catholic Diocese of Peoria*, 351 Ill. App. 3d 588 (2004)). In the interest of efficiently administering justice, we address the ultimate dispute raised in the parties' briefs. We hold that under section 8-802(4), defendants maintain their physician-patient privilege until they waive it by affirmatively placing their health at issue.

¶ 17                                    I. Discovery Order

¶ 18     The parties dispute whether the statutory physician-patient privilege (735 ILCS 5/8-802 (West 2016)) applies to this case. Normally, discovery orders are not reversed absent a manifest abuse of discretion; however, "the applicability of a statutory evidentiary privilege, and any exceptions thereto, are matters of law subject to *de novo* review." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002). Contemnor waived Holocker's HIPAA objection by failing to address the issue in his brief. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016).

¶ 19     The physician-patient privilege protects patients' medical records from disclosure without their consent. 735 ILCS 5/8-802 (West 2016). Patients' medical records contain "information regarding diagnosis, examinations, tests, or treatment rendered." *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388, 403 (1989). Medical care providers acquire and record this information because it is necessary to enable the provider to serve or treat the patient. See *id.* at 404. Thus, patients' medical records are privileged unless a statutory exception applies. See 735 ILCS 5/8-802 (West 2016).

¶ 20     The privilege is subject to 14 enumerated exceptions. The exception at issue, section 8-802(4), states the privilege is inapplicable "in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). Palm contends that "an issue" means "relevant to the case." Further, Palm argues that we must construe the privilege as narrowly as possible because it did not exist at common law. Contemnor counters that a plaintiff cannot force a defendant to disclose privileged medical information, regardless of its relevance, simply by pleading allegations that implicate the defendant's health.

¶ 21     Our supreme court has held that the privilege's purposes are to "encourage free disclosure between a doctor and a patient and to protect the patient from embarrassment and invasion of privacy that disclosure would entail." *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 575 (2002). The privilege illustrates a "legislative balancing between relationships that society feels should be fostered through the shield of confidentiality and the interests served by disclosure of the information." *Id.* at 575-76.

¶ 22     When we interpret statutes, even " statutes in derogation of the common law, " we must observe the statute's legislative purpose and construe it "in such a way as to avoid impractical or absurd results. " (Internal quotation marks omitted.) *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶¶ 19, 21. The privilege's purposes indicate that "an issue" in section 8-802(4) does not mean "relevant." If it did, the privilege would not be a "legislative

balancing" between confidentiality and "the interests served by disclosure of information." Disclosing irrelevant information serves no interest. If the legislature meant section 8-802(4) to except all relevant medical information from the privilege's scope, it would have simply stated the privilege does not apply in any litigation—irrelevant evidence is neither subject to disclosure nor admissible regardless of its subject matter. See Ill. R. Evid. 701 (eff. Jan. 1, 2011); Ill. S. Ct. R. 201(b) (eff. July 30, 2014); R. 412 (eff. Mar. 1, 2001).

¶ 23    Similar to section 8-802(4)'s requirement that the defendant's physical or mental condition be "an issue" for the exception to apply (735 ILCS 5/8-802(4) (West 2016)), Illinois Supreme Court Rule 215(d)(1) (eff. Mar. 28, 2011) requires that a party's "mental or physical condition" be "placed in issue" before a court may order a physical or mental examination. Rule 215's latest committee comments state: "Paragraph (d) provides that a trial court may order impartial medical examinations only where the parties have presented conflicting medical testimony, reports or other such documentation which places a party's mental or physical condition 'in issue' ***. *Mere allegations are insufficient to place a party's mental or physical condition 'in issue.'*" (Emphasis added.) Ill. S. Ct. R. 215(d), Committee Comments (adopted Mar. 28, 2011). This language implies that "in issue" does not mean "relevant."

¶ 24    We agree with contemnor that section 8-802(4) applies only where a defendant affirmatively presents evidence that places his or her health at issue. Neither the nature of a plaintiff's cause of action nor factual allegations in a plaintiff's complaint waive a defendant's physician-patient privilege. See *Kraima v. Ausman*, 365 Ill. App. 3d 530, 536 (2006) ("In order for [section 8-802(4)] to apply, the patient *** not plaintiff, must have affirmatively placed his physical condition in issue."); *Pritchard*, 191 Ill. App. 3d at 405. A plaintiff cannot waive someone else's privilege by merely filing a lawsuit or making certain allegations.

¶ 25    Under section 8-802(4), defendants affirmatively place their health at issue when they utilize a physical or mental condition to defend the case. Two examples are where a defendant cites a health condition to dispute a plaintiff's factual allegations (*Doe v. Weinzweig*, 2015 IL App (1st) 133424-B) or where a defendant files an affirmative defense that claims a sudden, unforeseeable health condition caused the allegedly tortious conduct (*Burns v. Grezeka*, 155 Ill. App. 3d 294 (1987)). In either example, the plaintiff has the right to test the claim's merit by obtaining the defendant's medical records, just as defendants have the right to contest plaintiffs' personal injury claims by obtaining their medical records.

¶ 26    Absent Holocker affirmatively placing his health at issue, we see no compelling reason to vitiate his privilege. His medical records have no bearing on his liability. Holocker's driving, not the reason for his driving, is at issue; he either drove negligently or he did not. If Holocker possessed a valid license and operated his vehicle as a reasonably prudent person would, then he is not liable for Palm's injuries regardless of his health or vision. If Holocker drove negligently and proximately caused Palm's injuries, then he is liable. He has not asserted a defense or any other affirmative matter that attributes his driving to a health condition.

¶ 27    In arguing that Holocker's health and vision is relevant in this case, Palm points to his driving record, which indicates he participated in several prior accidents and received prior traffic citations. Holocker's driving record, if admissible, stands on its own. The fact that he caused prior accidents or received citations has no bearing on his health or vision in this case.

Palm's focus on Holocker's health or vision is a red herring that averts attention from the liability issue—whether he operated his vehicle negligently when this collision occurred.

¶ 28　　Along that same line, Palm's interpretation of section 8-802(4) permits plaintiffs to leverage settlement based on the contents of a defendant's medical records rather than his or her potential liability. If plaintiffs could waive defendants' privilege simply by filing a lawsuit or making certain allegations, some defendants might feel compelled to settle to avoid disclosing certain health conditions, procedures, or treatments that have nothing to do with their liability. We do not believe the legislature intended section 8-802(4) to permit such unwarranted invasions of privacy. Under Palm's interpretation, we cannot imagine any automobile accident case in which a plaintiff could not argue that a defendant's negligent driving might be related to a vision or other health related problem, thereby requiring disclosure of defendant's medical records.

¶ 29　　The parties agree that Holocker has not affirmatively placed his health at issue in this case. Therefore, section 8-802(4)'s exception does not apply in this case. Palm has not argued that Holocker's interrogatory responses are relevant standing alone. Because we hold that Holocker's privilege protects his medical records, his responses are not likely to lead to discoverable information. We reverse the circuit court's discovery order. On remand, the court shall order Palm's counsel to promptly relinquish possession of Holocker's medical records from all sources in a manner the court deems sufficient to protect his privacy.

¶ 30　　　　　　　　　　　　　　II. Civil Contempt Order

¶ 31　　Inviting civil contempt is a proper means to test the validity of a court's discovery order (*Norskog*, 197 Ill. 2d at 69); therefore, it is appropriate to vacate the contempt order on appeal if the contemnor's challenge is a "good-faith effort to secure an interpretation of an issue without direct precedent." *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 57. Contemnor invited contempt in good faith. We vacate the circuit court's contempt order.

¶ 32　　　　　　　　　　　　　　　　CONCLUSION

¶ 33　　For the foregoing reasons, we reverse the judgment of the circuit court of Marshall County, vacate the contempt sanction against contemnor, and remand the case for further proceedings consistent with this opinion.

¶ 34　　Reversed in part and vacated in part; cause remanded.