# Illinois Official Reports

## Supreme Court

---

**Bank of New York Mellon v. Laskowski, 2018 IL 121995**

---

| | |
|---|---|
| Caption in Supreme Court: | BANK OF NEW YORK MELLON, Appellee, v. MARK E. LASKOWSKI *et al.* (Pacific Realty Group, LLC, Appellant). |
| Docket No. | 121995 |
| Filed | January 19, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Thomas A. Thanas, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Cause remanded. |
| Counsel on Appeal | Carla Sherieves, of CMS Law, LLC, of Chicago, for appellant. Joseph D. Kern and Matthew R. Carter, of Winston & Strawn LLP, of Chicago, for appellee. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

**OPIION**

**OPINION**

¶ 1     The issue we must decide is whether Pacific Realty Group, LLC, timely filed its motion to quash service. We hold that it did.

¶ 2                                          BACKGROUND

¶ 3     On June 11, 2010, in its capacity as the trustee for certain certificate holders of an alternative loan trust, the Bank of New York Mellon (the Bank) filed a residential mortgage foreclosure complaint against Mark Laskowski, Pacific Realty Group, LLC (Pacific), and others in Will County circuit court. In July 2010, the Bank filed an affidavit for service by publication stating that, after a due diligence search, it was unable to locate or serve Pacific. The Bank's search included both directory assistance records and the Illinois Secretary of State's business registration records. After service by publication was made, Pacific failed to appear or otherwise respond to the complaint. In July 2012, the trial court entered an order of default and a judgment of foreclosure. In the judgment, the trial court made a specific finding that service of process was properly made as to Pacific. In February 2013, the subject property was sold at a sheriff's sale.

¶ 4     In April 2013, the Bank filed a motion requesting an order approving the report of the sale of the property and the proposed distribution of the proceeds, as well as an order of possession. The motion was noticed up for April 18, 2013, and on that date Pacific's attorney showed up for the first time and filed an appearance. However, because the Bank failed to appear, the trial court on its own motion dismissed the Bank's case for want of prosecution (DWP). Shortly thereafter, the Bank moved to vacate the DWP. On May 30, 2013, the trial court granted the Bank's motion and reinstated the case.

¶ 5     On July 18, 2013, Pacific filed a motion to quash service of process. The motion alleged that Pacific is a foreign LLC registered in New Mexico and that it does not have a registered agent in Illinois. According to Pacific, this means that service by publication was improper because section 1-50 of the Limited Liability Company Act (805 ILCS 180/1-50 (West 2010)) does not allow an unregistered foreign LLC to be served in that manner. In May 2014, the trial court denied Pacific's motion. In doing so, the trial court first found that the motion was untimely because it was filed more than 60 days after Pacific filed its appearance in the case. See 735 ILCS 5/15-1505.6(a) (West 2012). The trial court also denied the motion on the merits, holding that service by publication was proper. The trial court subsequently entered an order approving the report of the sheriff's sale and the proposed distribution of the proceeds.

¶ 6     Pacific appealed, and a divided appellate court affirmed the trial court's decision denying Pacific's motion. 2017 IL App (3d) 140566. On appeal, Pacific argued both that its motion to quash service was timely and that it should have been granted on the merits. The appellate court majority began with the timeliness question, citing section 15-1505.6(a) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1505.6(a) (West 2012)). In relevant part, that section states that, "unless extended by the court for good cause shown," the deadline for filing a motion to quash service in a residential foreclosure case is "60 days after *** the date that the moving party filed an appearance." *Id.* § 15-1505.6(a)(i). The majority explained that, although Pacific filed its appearance on April 18, 2013, it did not file its motion to quash service until July 18, 2013, which was nearly 90 days later. 2017 IL App (3d) 140566, ¶ 16. As

importantly, Pacific did not seek or obtain an extension of the 60-day deadline "for good cause," as section 15-1505.6(a) allows. *Id.* Consequently, the majority held, Pacific's motion to quash was clearly untimely, and the trial court was correct to deny it as such. *Id.* As a final matter, the majority stated that, because it affirmed the trial court's finding that Pacific's motion was untimely, it "need not address *** whether the service by publication on Pacific in this case was proper." *Id.* ¶ 17.

¶ 7        Justice Holdridge dissented. His position was that, under the principles announced by this court in *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207 (2007), "the 60-day deadline for contesting service could not have applied" while the case was DWP. 2017 IL App (3d) 140566, ¶ 23 (Holdridge, J., dissenting). Rather, that deadline began to run only when the case was reinstated, which occurred on May 30, 2013. *Id.* Pacific's motion to quash therefore was timely, as it was filed 49 days later, on July 18, 2013. *Id.*

¶ 8        We granted Pacific's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)).

¶ 9                                                    DISCUSSION

¶ 10        In this court, Pacific raises the same two arguments that it raised in the appellate court below. First, Pacific argues that its motion to quash service was timely. Second, Pacific argues that its motion to quash service should have been granted because service by publication was improper in this case. We will begin with the timeliness question.

¶ 11                                                    *Timeliness*

¶ 12        Pacific's timeliness argument raises a question of statutory interpretation, and the principles governing such inquiries are familiar and well settled. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Johnson*, 2017 IL 120310, ¶ 15. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* That said, a court also will presume that the legislature did not intend absurd, inconvenient, or unjust results. *Id.* Consequently, where a plain or literal reading of a statute renders such results, the literal reading should yield. *Id.* The construction of a statute is a question of law that we review *de novo*. *Id.*

¶ 13        The statute at issue is section 15-1505.6(a) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1505.6(a) (West 2012)). In relevant part, that section provides that:

"In any residential foreclosure action, the deadline for filing a motion to *** quash service of process *** unless extended by the court for good cause shown, is 60 days after the earlier of these events: (i) the date that the moving party filed an appearance; or (ii) the date that the moving party participated in a hearing without filing an appearance." *Id.*

Here, it is undisputed that Pacific filed its motion to quash service on July 18, 2013, which was approximately 90 days after it filed its appearance. The question for us is whether the 60-day statutory clock continued to run while the Bank's case was DWP. Pacific insists that it did not because, as long as the case was DWP, there was neither reason nor opportunity for Pacific to file a motion to quash service. In support, and like the dissent below, Pacific relies principally upon this court's decision in *Case*. The Bank, by contrast, argues that section 15-1505.6(a) is "clear and unambiguous" in stating that, unless extended by the court for good cause, the deadline for filing a motion to quash service in a residential foreclosure action is 60 days after

the moving party files its appearance. Here, the court did not extend the 60-day deadline, and Pacific filed its motion approximately 90 days after filing its appearance. Thus, the Bank argues, there is no question that Pacific's motion was untimely, and this court does not have to look any further than the plain language of the statute to reach this obvious conclusion.

¶ 14   For two reasons, we agree with Pacific. To begin with, the plain language of section 15-1505.6(a) supports the conclusion that the 60-day clock is tolled while the underlying case is DWP. In relevant part, section 15-1505.6(a) states that, "[i]n any residential foreclosure action," the deadline for filing a motion to quash service of process is 60 days after the moving party files its appearance. *Id.* The key phrase here is "[i]n any residential foreclosure action," because that phrase expressly defines the setting in which the passage of time will be measured. Needless to say, 60 days cannot pass in a residential foreclosure action if no such action is pending. Nor can a party comply with the statutory filing deadline in the absence of an active case, even if it wanted to. Thus, to suggest that Pacific was still on the clock even when the Bank's case was DWP is to suggest the impossible, both conceptually and practically. The legislature's use of the phrase "[i]n any residential foreclosure action" clearly reflects this reality, and we therefore reject the Bank's contention that the 60-day deadline was unaffected by the dismissal of the Bank's case.

¶ 15   As Pacific correctly points out, this conclusion finds solid support in our decision in *Case*. In *Case*, the plaintiffs filed a negligence complaint on April 25, 2003. *Case*, 227 Ill. 2d at 209. A month later, on May 20, 2003, the plaintiffs voluntarily dismissed that complaint pursuant to section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2006)). *Case*, 227 Ill. 2d at 210. Almost one year later, on April 12, 2004, the plaintiffs refiled their complaint pursuant to section 13-217 of the Code (735 ILCS 5/13-217 (West 2006)). *Case*, 227 Ill. 2d at 210. Section 13-217 provides that, where a plaintiff voluntarily dismisses a timely filed complaint, that plaintiff has either one year or the remaining limitations period, whichever is greater, to refile the action. By April 26, 2004, the plaintiffs had obtained service of process on all of the defendants. *Id.* The defendants later filed a motion to dismiss under Illinois Supreme Court Rule 103(b) (eff. July 1, 1997), arguing that the plaintiffs had failed to exercise reasonable diligence in obtaining service of process. *Case*, 227 Ill. 2d at 211. After a hearing, the trial court held that the plaintiffs had violated Rule 103(b), in that it took the plaintiffs almost one year after the initial filing to obtain service on the defendants, despite the fact the defendants were all local health care providers with readily ascertained locations. *Id.* Accordingly, the trial court dismissed the plaintiffs' case with prejudice. *Id.*

¶ 16   In reversing the trial court's decision, this court explained that "the pendency of an action that a defendant argues is delayed is central to any determination of whether a passage of time should be considered for purposes of Rule 103(b)." *Id.* at 217. Further, the court explained that

> "[t]he requirement of a pending action against which to measure diligence is rooted in simple logic. If an action is dismissed, and not pending, there is no reason to serve a defendant with process. As such, there is nothing to delay, and nothing to be diligent about." *Id.*

Accordingly, the court concluded by holding that "the time that elapses between the dismissal of a plaintiff's complaint and its refiling pursuant to section 13-217 is not to be considered by a court when ruling on a motion to dismiss for violation of Rule 103(b)." *Id.* at 222.

¶ 17    The same logic that controlled *Case* controls here. Again, before 60 days can pass "[i]n any residential foreclosure action," such an action necessarily must be pending. And unless such an action is pending, there is neither cause nor occasion to file a motion contesting the plaintiff's service of process. Accordingly, we hold that the time that elapses between the DWP of a residential mortgage foreclosure action and its subsequent reinstatement is not to be counted in determining whether a motion to quash service is timely under section 15-1505.6(a).

¶ 18    Our second reason for agreeing with Pacific is rooted in the principle that, in construing the language of a statute, courts will presume that the legislature did not intend absurd, inconvenient, or unjust results. Pacific's reading of section 15-1505.6(a) yields no such results. On the contrary, Pacific's reading yields an entirely sensible and workable result, by which the statutory time period for filing a motion to quash service in a residential foreclosure action runs as long as the case is pending and ceases to run as long as the case is not pending. By contrast, the Bank's reading of section 15-1505.6(a) yields results that are at once absurd, inconvenient, *and* unjust. The absurdity lies in the prospect of section 15-1505.6(a)'s 60-day filing period not only *running* but also *expiring* while the underlying case is DWP, which is what would have happened here had the order vacating the DWP come just two weeks later than it did. The inconvenience comes in mandating the noticing up and filing of a motion to quash service in a case that has been dismissed, a procedural maneuver so unprecedented that the Bank's own counsel concedes "there's no way to definitively know" how it could be done. Finally, the injustice would come in holding that a residential foreclosure defendant is bound by a statutory filing deadline with which it is legally impossible to comply, which is exactly what we would be saying if we endorsed the Bank's reading of section 15-1505.6(a) and held that the 60-day clock continues to run even while the action is dismissed. For all of these reasons, we emphatically reject the Bank's reading of section 15-1505.6(a) in favor of that advocated by Pacific and compelled by the clear statutory language, given its plain and ordinary meaning.

¶ 19    The only question that remains on this point is whether Pacific's motion to quash service was in fact timely. We hold that it was. Again, section 15-1505.6(a) provides that, in any residential foreclosure action, the deadline for filing a motion to quash service of process is "60 days after *** the date that the moving party filed an appearance." 735 ILCS 5/15-1505.6(a)(i) (West 2012). And under our holding above, the time that elapses between the DWP of a residential mortgage foreclosure action and its subsequent reinstatement is not to be counted in calculating the statutory deadline. Here, Pacific filed its appearance on April 18, 2013, which was the same date that the trial court dismissed the Bank's case for want of prosecution. This means that, once the DWP was vacated and the Bank's case reinstated, Pacific had 60 days to file its motion to quash service. The trial court's order vacating the DWP and reinstating the Bank's case was entered on May 30, 2013, and Pacific filed its motion 49 days later, on July 18, 2013. This was well within the statutory deadline, and we therefore hold that Pacific's motion to quash service was timely.

¶ 20                                                    *Service by Publication*

¶ 21    Pacific's other argument is that the trial court should have granted its motion to quash service because service by publication was legally improper in this case. As discussed above, because it agreed with the trial court's conclusion that Pacific's motion to quash service was untimely, the appellate court below did not reach the question of whether service by

publication was proper. We therefore remand this case to the appellate court for the consideration of that question in the first instance.

¶ 22                                    CONCLUSION

¶ 23        For the foregoing reasons, we reverse the appellate court's judgment affirming the trial court's decision finding that Pacific's motion to quash service was untimely, and we remand this cause to the appellate court for consideration of whether service by publication was proper in this case.

¶ 24        Appellate court judgment reversed.

¶ 25        Cause remanded.