**2018 IL 123152**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 123152)

SCARLETT PALM, Appellant, v. RUBEN HOLOCKER (Karl Bayer, Contemnor-Appellee).

*Opinion filed December 13, 2018.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1        At issue is whether contemnor, Karl Bayer, was entitled to assert the physician-patient privilege (735 ILCS 5/8-802 (West 2016)) in this negligence case. Bayer refused to provide answers to two interrogatories seeking the names of health care providers who had treated his client, defendant Ruben Holocker. The trial court ordered contemnor to provide answers to the interrogatories, and when contemnor refused to do so, the court held him in contempt. Contemnor appealed

the contempt order, and the appellate court reversed the discovery order and vacated the contempt order. The appellate court held that the information was privileged because defendant's medical condition was not an issue in the case. 2017 IL App (3d) 170087. Plaintiff appeals, and we affirm the appellate court's judgment as modified.

¶ 2                                    BACKGROUND

¶ 3        On October 18, 2014, defendant, Ruben Holocker, struck plaintiff, Scarlett Palm, with his vehicle. At the time, plaintiff was a pedestrian and was crossing the intersection of 5th Street and Ida Street in Lacon.

¶ 4        Plaintiff filed a personal injury complaint against defendant in the circuit court of Marshall County. Plaintiff alleged that defendant was negligent in one or more of the following ways:

"a. Failed to keep and maintain a safe and proper lookout as he drove his vehicle into the intersection;

b. Drove his vehicle and turned left onto 5th Street from Ida [Street] when he failed to stop at the stop sign at Ida; and

[c.] Failed to yield the right-of-way to Plaintiff, who had the preferred right-of-way while walking across 5th Street at said intersection, and thereby violated 625 ILCS 5/11-1204."

¶ 5        Defendant filed an answer in which he denied all three of the above allegations of negligence. Additionally, defendant filed an affirmative defense in which he alleged that plaintiff was more than 50% responsible for her injuries. Defendant alleged that plaintiff was negligent in that she:

"a) Improperly crossed a street when it was unsafe to do so;

b) Failed to keep a proper lookout; and

c) Was under the influence of an alcoholic or narcotic substance that impaired her ability at the time of the accident."

Defendant asserted that any recovery that plaintiff received should be reduced by that portion of contributory negligence attributable to plaintiff.

¶ 6        Plaintiff served Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) interrogatories on defendant, including the following:

"20. Do you have any medical and/or physical condition which required a physician's report and/or letter of approval in order to drive? If so, state the nature of the medical and/or physical condition, the physician or other health care professional who issued the letter and/or report, and the names and addresses of any physician or other health care professional who treated you for this condition prior to the occurrence.

21. State the name and address of any physician, ophthalmologist, optician or other health care professional who performed any eye examination of you within the last five (5) years, and the dates of each such examination.

22. State the name of any physician or other health care professional who examined and/or treated you within the last ten (10) years, and the dates of each such examination."

¶ 7        Defendant answered interrogatory number 20 by stating, "Yes, diabetic reasons, Dr. Christopher Nau, 4th [S]treet, Chillicothe, IL 274-4336." However, he refused to answer numbers 21 and 22. For each of these, he provided the following objection: "The defendant objects to the question as it violates [HIPAA], doctor-patient privilege, and the Defendant has not placed his medical condition at issue in this matter."

¶ 8        Plaintiff filed a motion to strike defendant's objections and compel defendant's answers to interrogatories 21 and 22. At a hearing on the motion to compel, plaintiff argued that defendant's ability to see and to drive was at issue because he drove his vehicle into a pedestrian. Plaintiff's counsel explained to the trial court why he believed that defendant's ability to see was at issue:

"MR. O'DONNELL: And Judge, here, just by way of background, a few weeks after this happened our client got a Facebook post from someone that said that the defendant in this case is legally blind, from someone who knows him, and that he has had other—a few other collisions that he's never reported

to anyone because of the fear of a revocation of his privileges based upon his difficulties with vision."

¶ 9    Contemnor argued that defendant's medical information was privileged because the defense was not putting defendant's medical condition at issue. Contemnor acknowledged that defendant requires a doctor's note to drive but explained that the defense was not claiming that defendant suffered a "sudden and unexpected attack." The court then asked about the allegation that defendant failed to keep a proper lookout. Contemnor said that he believed the testimony would show that his client was waving to a pedestrian by the side of the road and was simply not looking at plaintiff. Contemnor argued that vision was not at issue because defendant was not even looking in plaintiff's direction at the time. The court granted plaintiff's motion, ordered defendant to answer the interrogatories, and entered a Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 1320d *et seq.* (2012)) order applicable to plaintiff and defendant. Plaintiff had previously subpoenaed defendant's medical records from Dr. Nau and the Secretary of State, and the court ordered the Secretary of State to comply with the subpoena.

¶ 10    Defendant still refused to answer the interrogatories, and plaintiff moved for sanctions. At the hearing on the motion for sanctions, contemnor argued that Illinois case law provides that a defendant's medical information is privileged unless the defendant puts his medical condition in issue. Contemnor argued that he was not putting defendant's medical condition at issue. The trial judge asked plaintiff's counsel if he contended that defendant's answer that he needed a doctor's note to drive because of diabetic reasons had put defendant's possible visual impediment at issue. Plaintiff's counsel responded that there was "no question" that defendant's sight was at issue because he had hit a pedestrian in broad daylight. Contemnor told the court that he believed defendant would testify in his deposition that the reason he did not see plaintiff was that he was waving to a friend of his on the corner. Plaintiff's attorney told the court that he had subpoenaed defendant's driving records and that defendant had been involved in seven or eight different collisions before the present one and he wanted to find out if defendant was using multiple optometrists to find one who would clear him to drive. Plaintiff also wanted to subpoena Dr. Nau's records. The trial court said that it did not want plaintiff going on a fishing expedition but that it did believe that sight was an issue

based on the fact that defendant had diabetes and had not seen the plaintiff when he struck her. Contemnor disagreed and explained that the reason for the doctor's permission might be to make sure that defendant's blood sugar was controlled and that he was not having episodes of low blood sugar. Contemnor also pointed out that defendant had a valid driver's license at the time of the accident. The court found that plaintiff had legitimate reasonable cause to believe that defendant had sight problems that could have been related to the accident and that plaintiff had "a right to look for that." The court held defendant's attorney in contempt and imposed a $5-per-day fine until contemnor submitted answers to the interrogatories.

¶ 11        Contemnor appealed, and the appellate court reversed the contempt finding. The court first noted a potential procedural problem. The appeal was from an order holding contemnor in contempt for failing to provide answers to two interrogatories. The parties briefed the broader issue of whether the physician-patient privilege applied at all in this case, not whether it applied to the two interrogatories. 2017 IL App (3d) 170087, ¶ 15. However, the court found that it should address the briefed issue in the interests of the orderly administration of justice and to avoid an inevitable second appeal. *Id.* ¶ 16. Moreover, the court noted that a ruling that the privilege applied would render the interrogatories pointless. *Id.* ¶ 15. If plaintiff could not obtain defendant's medical records, the answers to the two interrogatories would not lead to discoverable information. *Id.* ¶ 29.

¶ 12        The court held that the records were privileged under section 8-802 of the Code of Civil Procedure and that the exception provided in subsection (4) did not apply. This exception provides that the privilege does not apply "in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). Plaintiff argued that "an issue" as used in this subsection simply means relevant. The appellate court disagreed. The court noted that irrelevant information is neither subject to disclosure nor admissible in evidence and, if the legislature meant "an issue" to mean "relevant," it would have simply said that the privilege does not apply in any litigation. 2017 IL App (3d) 170087, ¶ 22. The court held that section 8-802(4) applies only when a defendant affirmatively places his or her health at issue and that a plaintiff cannot waive someone else's privilege. *Id.* ¶ 24. Relying on *Kraima v. Ausman*, 365 Ill. App. 3d 530, 536 (2006), and *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388,

405 (1989), the court held that "[n]either the nature of a plaintiff's cause of action nor factual allegations in a plaintiff's complaint waive a defendant's physician-patient privilege." 2017 IL App (3d) 170087, ¶ 24. The court noted that Illinois Supreme Court Rule 215(d)(1) (eff. Mar. 28, 2011), which addresses when a court may order a party to undergo a mental or physical exam, provides that a court may do so when a party's " 'mental or physical condition' " is " 'placed in issue.' " 2017 IL App (3d) 170087, ¶ 23. The committee comments provide that " '[m]ere allegations are insufficient to place a party's mental or physical condition in "issue." ' " (Emphasis omitted.) *Id.* (quoting Ill. S. Ct. R. 215(d) Committee Comments (adopted Mar. 28, 2011)). The court inferred from this that "in issue" does not mean "relevant." *Id.*[1]

¶ 13   Thus, the court determined that defendant's medical records were privileged and that he had not placed his physical or mental condition at issue. The court determined that defendant's medical condition had no bearing on his liability because "he either drove negligently or he did not." *Id.* ¶ 26. The court explained that if defendant "possessed a valid license and operated his vehicle as a reasonably prudent person would, then he is not liable for [plaintiff's] injuries regardless of his health or vision. If [defendant] drove negligently and proximately caused [plaintiff's] injuries, then he is liable." *Id.* Because defendant had not affirmatively placed his health in issue, the court determined that the interrogatory answers were not likely to lead to discoverable information. *Id.* ¶ 29. Thus, the court reversed the circuit court's discovery order, ordered plaintiff's counsel to relinquish any of defendant's medical records that he had obtained, and vacated the contempt order.[2] *Id.* ¶¶ 29, 31.

---

[1]We note that Rule 215(d)(1) does not merely use the phrase "in issue" but rather sets forth how something becomes "an issue" for purposes of the rule. See Illinois Supreme Court Rule 215(d)(1) (eff. Mar. 28, 2011) (explaining that the court may order a physical or mental examination of a party "where conflicting medical testimony, reports or other documentation has been offered as proof and the party's mental or physical condition is thereby placed in issue").

[2]Plaintiff's counsel explained at oral argument that he had obtained all of defendant's medical records that he needs. Counsel explained that, because Lacon is a small town, he was able to learn from people in the community what doctors and optometrists that defendant has seen.

¶ 14      We allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017).

¶ 15      ANALYSIS

¶ 16      Section 8-802 of the Code of Civil Procedure provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2016). The statute then lists 14 situations in which the privilege does not apply. The physician-patient privilege exists to encourage disclosure between a doctor and a patient and to protect the patient from invasions of privacy. See *Reagan v. Searcy*, 323 Ill. App. 3d 393, 395 (2001). The purpose of the privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient. See *People v. Wilber*, 279 Ill. App. 3d 462, 467 (1996). The legislature has recognized that patients have an interest in maintaining confidentiality in their medical dealings with physicians. *People v. Florendo*, 95 Ill. 2d 155, 158 (1983).

¶ 17      Resolution of this appeal turns on the meaning of "an issue" in section 8-802(4), which provides that the privilege does not apply in any action wherein "the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* It is improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997). If the meaning of an enactment is unclear from the statutory language, the court may consider the purpose behind the law and the evils the law was designed to remedy. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. We have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended. *People ex rel. Alvarez v.*

*Gaughan*, 2016 IL 120110, ¶ 19. Statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 19. Our review is *de novo*. *Id.* ¶ 11.

¶ 18    Plaintiff argues that the appellate court impermissibly added language to section 8-802(4). Plaintiff points out that this section merely requires that the patient's physical or mental condition be "an issue" and it does not say that only the patient may put his or her medical condition at issue. Plaintiff further points out that the appellate court did not discuss any of the opinions filed after *Kraima* and *Pritchard* in which the courts have applied section 8-802(4) when the State has put a defendant's medical condition in issue. See *People v. Beck*, 2017 IL App (4th) 160654 (postaccident medical records in aggravated driving under the influence (DUI) proceeding); *People v. Botsis*, 388 Ill. App. 3d 422 (2009) (medical records in reckless homicide proceeding); *People v. Popeck*, 385 Ill. App. 3d 806 (2008) (postaccident medical records in DUI proceeding); *In re Detention of Anders*, 304 Ill. App. 3d 117 (1999) (mental health evaluation in Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West Supp. 1997)) proceeding); *People v. Nohren*, 283 Ill. App. 3d 753 (1996) (blood test results in DUI proceeding); *Wilber*, 279 Ill. App. 3d 462; (postaccident statements to paramedics in aggravated DUI proceeding); *People v. Krause*, 273 Ill. App. 3d 59 (1995) (postaccident statements to paramedics in aggravated DUI proceeding).

¶ 19    Defendant responds by arguing that civil and criminal cases have separate rules for how a patient's physical or mental condition becomes "an issue" for purposes of section 8-802(4). Defendant contends that, in a civil case, the exception applies only when a party puts his or her own physical condition at issue by affirmative pleading. Thus, a plaintiff who files a personal injury action necessarily puts his or her own physical or mental condition at issue, and a defendant in a civil case puts his or her own physical or mental condition at issue by asserting it as part of a defense. By contrast, in criminal cases, something may become "an issue" if the legislature has made it an element of the offense.[3] This is how defendant reconciles

---

[3]Defendant's theory does not work for all of the cases. For instance, a defendant's physical or mental condition is not an element of the offense of reckless homicide. See 720 ILCS 5/9-3(a) (West 2016). What the court held in *Botsis* was that the defendant's medical condition was an issue because it was *relevant* to the issue of recklessness. *Botsis*, 388 Ill. App. 3d at 435. But this is

these disparate lines of cases. Defendant explains *In re Detention of Anders*, 304 Ill. App. 3d 117, by arguing that the criminal rule would apply in a Sexually Violent Persons Commitment Act proceeding because the respondent's mental condition is the subject of the commitment proceedings.

¶ 20    Plaintiff points out, however, that section 8-802(4) makes no distinction between civil and criminal cases and simply uses the language "in all actions." In other subsections of section 8-802, the legislature used language such as "in trials for homicide" (735 ILCS 5/8-802(1) (West 2016)), "in actions, civil or criminal" (*id.* § 8-802(2), (7)), "in any criminal action" (*id.* § 8-802(6)), "in prosecutions" (*id.* § 8-802(9), (10)), and "in criminal actions" (*id.* § 8-802(11)). Thus, the legislature was very specific when it wanted to draw a distinction between civil and criminal cases, and subsection (4) contains no such distinction. Indeed, subsection (6) makes defendant's interpretation problematic. This exception provides that medical records may be disclosed "in any criminal action where the charge is either first degree murder by abortion, attempted abortion or abortion." *Id.* § 8-802(6). If subsection (4) made medical records discoverable in all criminal actions wherein a defendant's physical condition is an element of the offense, then subsection (6) would seem to be superfluous. Thus, contrary to defendant's argument, there seems to be a genuine conflict between how the courts have applied subsection (4) in civil and criminal cases. In civil cases, the courts have held that only the patient may waive his or her own privilege by putting his or her physical or mental condition at issue, while in the criminal context, the courts have allowed the State to waive a defendant's privilege by putting his or her physical or mental condition at issue.

¶ 21    It appears that most states have agreed with the appellate court below that a plaintiff may not waive a defendant's privilege by putting the defendant's medical condition at issue. In *Griego v. Douglas*, No. CIV 17-0244 KBM/JHR, 2018 WL 2376330 (D. N.M. May 24, 2018), a federal district court was confronted with this issue. *Griego* was a wrongful death case arising out of a traffic accident in which the plaintiffs wanted access to the defendant's medical records. The plaintiffs had

---

precisely the definition of "an issue" that the appellate court rejected here. See 2017 IL App (3d) 170087, ¶¶ 22-23 (explaining that "an issue" in section 8-802(4) does not mean "relevant"). Defendant also categorically rejects the argument that "an issue" means "relevant."

alleged in the suit that the defendant had failed to yield the right of way, made an improper turn, and was inattentive while driving. *Id.* at *1. The plaintiffs contended that the defendant's overall medical condition and especially his quality of vision were highly relevant to whether he was negligent. The plaintiffs further contended that the defendant's medical condition was at issue because he was over 75 and drivers in New Mexico over that age are required to provide a physician's report when renewing a driver's license. *Id.* at *2. The defendant did not rely on a medical condition as part of his defense. Rather, he simply denied liability. *Id.* at *1.

¶ 22   Before turning to the specific provisions of New Mexico law, the court conducted a survey of how the various states had dealt with this issue. The court concluded that "[m]ost courts that have addressed the matter have found that a defendant's medical records are privileged, and that a defendant does not waive the privilege merely by driving, denying fault, or asserting comparative negligence." *Id.* at *5. The only state the court could find that had held that a plaintiff could put a defendant's physical condition at issue so as to waive the defendant's privilege was North Carolina. *Id.* at *6. The court then considered New Mexico law and noted that "the physician-patient privilege has enjoyed considerable deference, with substantial protection provided to all but those patients who explicitly waived it." *Id.* at*7. The court noted that New Mexico had even gone so far as holding that in a DUI prosecution a defendant did not waive the privilege by pleading not guilty. *Id.* at *6 (citing *State v. Roper*, 921 P.2d 322, 326 (N.M. Ct. App. 1996). The court thus determined that the plaintiffs were not entitled to a general release of the defendant's medical records:

> "In summary, the general rule is that a defendant driver in a civil case does not waive the physician-patient privilege simply by denying fault or asserting comparative negligence. Additionally, the general rule is that a *plaintiff* may not effect a waiver of a *defendant's* privilege even where there is evidence that the defendant may have been impaired at the time of the collision." (Emphases in original). *Id.* at *7

¶ 23   We note, however, that the issue was much easier for *Griego* than it is for us. The New Mexico rule words the relevant exception to the physician-patient privilege as follows:

"If a patient relies on a physical, mental, or emotional condition as part of a claim or defense, no privilege shall apply concerning confidential communications made relevant to that condition." N.M. S. Ct. R. 11-504(D)(3) (eff. Dec. 31, 2013).

Section 8-802(4) simply provides that the privilege does not apply in any action in which a patient's medical condition is "an issue." As *Griego* noted, North Carolina has taken the opposite view and held that a plaintiff may put a defendant's medical condition at issue so as to waive the defendant's privilege. But the North Carolina cases are not particularly helpful because the North Carolina statute does not contain a list of exceptions where the privilege does not apply. Rather, after stating the privilege, the statute provides that:

"Any resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice." N.C. Gen. Stat. § 8-53 (2017).

Thus, when a plaintiff has put a defendant's medical condition at issue, the North Carolina courts have relied on this provision to hold that a trial court did not abuse its discretion in ordering the production of the defendant's medical records. See *Roadway Express, Inc. v. Hayes*, 631 S.E.2d 41, 45-46 (N.C. Ct. App. 2006).

¶ 24 The legislature's intent in enacting section 8-802(4) is not clear, and the cases interpreting that section are inconsistent in applying it. Nevertheless, we determine that the issue of whether a plaintiff may put a defendant's medical condition in issue for purposes of section 8-802(4) is ultimately not presented by the facts of this case and that the appellate court said more than it needed to in resolving the appeal. We need not resolve whether a plaintiff may put a defendant's medical condition at issue so as to waive a defendant's privilege under section 8-802(4) because, on the record before us, plaintiff has not put defendant's medical condition at issue.

¶ 25 Plaintiff insists that this case simply turns on the meaning of the word "issue" in section 8-802(4). Again, this section provides that the privilege does not apply "in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). But simply relying on the plain meaning of the word "issue" does not help plaintiff. Webster's

defines "issue" as "a point in question of law or fact; *specif* : a single material point of law or fact depending in a suit that is affirmed by one side and denied by the other and that is presented for determination at the conclusion of the pleadings." Webster's Third New International Dictionary 1201 (1993). Black's defines "issue" as "[a] point in dispute between two or more parties" (Black's Law Dictionary 907 (9th ed. 2009)) and then quotes the following definition from Corpus Juris Secundum:

> " 'In federal civil procedure, an issue is a single, certain, and material point arising out of the allegations and contentions of the parties; it is a matter affirmed on one side and denied on the other, and when a fact is alleged in the complaint and denied in the answer, the matter is then put in issue between the parties.' " *Id.* (quoting 35A C.J.S. Federal Civil Procedure § 357, at 541 (1960)).

Other definitions are similar. See A Dictionary of Modern Legal Usage 470 (2d ed. 1995) (defining "facts in issue" as "facts that, in the pleadings, are affirmed on one side and denied on the other"); Black's Law Dictionary 745 (5th ed. 1979) ("A fact put in controversy by the pleadings; such may either be issues of law or fact. An 'issue' is a disputed point or question to which parties to action have narrowed their several allegations and upon which they are desirous of obtaining either decision of court on question of law or of court or jury on question of fact."); Barron's Law Dictionary 252 (3d ed. 1991) ("[i]n practice, an issue is a single, certain point of fact or law disputed between parties to the litigation, generally composed of an affirmative assertion by one side and a denial by the other"); Ballentine's Law Dictionary 669 (3d ed. 1969) (defining "issue of fact" as a "single, certain, and material part of dispute arising upon a denial of a material allegation in the adversary's pleading").

¶ 26      Considering the plain meaning of the word "issue" in a legal setting, we fail to see how defendant's medical condition is "an issue" in this case. Plaintiff filed a routine negligence complaint arising out of a traffic accident, alleging that defendant was negligent in three ways: failing to keep and maintain a safe and proper lookout, failing to stop at a stop sign, and failing to yield the right-of-way to a pedestrian. Defendant denied the allegations of negligence and filed an affirmative defense alleging that plaintiff was more than 50% at fault for her own

injuries. Defendant alleged that plaintiff crossed a street when it was unsafe to do so, failed to keep a proper lookout, and was under the influence of an alcoholic or narcotic substance. Neither the plaintiff nor the defendant asserted anything about defendant's physical or mental condition. If these allegations put a defendant's medical condition in issue, then it will be in issue in most traffic accident cases.

¶ 27       The trial court thought that the allegation that defendant failed to keep a proper lookout might have put his vision at issue, but alleging that someone failed to keep a proper lookout is not the same as alleging that someone has vision problems. Indeed, it is quite likely that in a majority of traffic accident cases one party could allege that the other party failed to keep a proper lookout. Such an allegation would apply to anyone who took his eyes off the road for any reason. Here, contemnor even stated that he expected defendant to testify that he was not looking where he was going at the time of the accident. We do not believe that an allegation that one party failed to keep a proper lookout puts that person's medical condition at issue.

¶ 28       It is important to remember how the information about defendant's alleged vision problem came to light. Plaintiff's counsel told the trial court that someone had posted on Facebook that defendant is legally blind. However something may become "an issue" in a case, it is clearly not through an oral representation about a hearsay statement that someone posted on Facebook. There is also defendant's response to interrogatory No. 20, in which he was asked if he had a medical condition that requires a physician's report or letter of approval to drive. Defendant responded that he requires such a report because he has diabetes and that his report is provided by Dr. Christopher Nau. This answer establishes nothing more than that, because of his diabetes, defendant is required to provide a doctor's report to renew his driver's license. Defendant disclosed the name of the doctor who provides the report. Plaintiff did not allege, however, that defendant did not have a valid driver's license at the time of the accident. Defendant's answer to this interrogatory did not make his medical condition "an issue" in the case. Therefore, because neither party has put defendant's physical or mental condition at issue, it is unnecessary for us to decide whether a plaintiff may put a defendant's medical condition at issue for purposes of section 8-802(4).

¶ 29       Nevertheless, although the appellate court correctly ordered plaintiff's counsel to relinquish defendant's medical records, we hold that plaintiff does not have to

relinquish Dr. Nau's report that plaintiff obtained from the Secretary of State. The appellate court ordered plaintiff's counsel to promptly relinquish possession of Holocker's medical records "from all sources." 2017 IL App (3d) 170087, ¶ 29. This order was too broad. We note that plaintiff asserted the privilege only with respect to interrogatories 21 and 22. Defendant did *not* assert the privilege with respect to interrogatory 20 and instead disclosed the name of the doctor who provides the report that allows him to renew his driver's license. As noted above, the purpose of the physician-patient privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient. When a patient obtains a physician's report in order to maintain his driving privileges, he is not seeking treatment. Courts have drawn on this distinction to hold that the physician-patient privilege does not apply to medical records used to obtain driving privileges.

¶ 30        For instance, in *Muller v. Rogers*, 534 N.W.2d 724 (Minn. Ct. App. 1995), the court held that the defendant's medical records were privileged in a wrongful death case arising out of a traffic accident because the defendant had simply denied liability and was not relying on a medical condition as part of his defense. The court held that a plaintiff may not place a defendant's physical condition in controversy and thereby effect a waiver of the defendant's privilege. *Id.* at 726. However, the court explained that the same consideration would not apply to records that the defendant had turned over to the Department of Public Safety for the " 'benefit of keeping a driver's license or obtaining handicapped license plates.' " *Id.* at 727. The court explained that disclosing confidential information to third parties waives the privilege. *Id.* The court further explained that the privilege exists to protect confidential information acquired by a physician seeing a patient for the purpose of providing treatment and that the "purpose of the defendant's disclosure to the Department of Public Safety was to obtain driving or licensing privileges, not to obtain medical treatment." *Id.*; see also, *e.g.*, *Matysik v. Judd Transportation, L.L.C.*, No. 1:14-cv-1889-TWP-DKL, 2016 WL 559217, at *1 (S.D. Ind. Feb. 2, 2016) (defendant's medical records privileged in suit alleging that he suffered a medical condition that caused him to fall asleep at the wheel, but privilege does not extend to record of his department of transportation physical examination because it was for the purpose of "meeting federal regulatory requirements and not for purposes of diagnosis and treatment"); *Jackson v. Wiersema Charter Service, Inc.*, No. 4:08CV00027 JCH, 2009 WL 1798389, at *1 (E.D. Mo. June 24, 2009)

("[r]ecords pertaining to a [commercial driver's license] medical examination are not within the scope of the physician-patient privilege"); *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 595-96 (Mo. Ct. App. 1990) (medical examination for purposes of satisfying federal regulations not within the scope of physician-patient privilege because privilege extends only to information acquired by physician for purposes of prescribing and treatment); Clinton DeWitt, Privileged Communications Between Physician and Patient 104-05 (1958) ("As a general rule, the relationship of physician and patient does not exist unless the physician's consultation with, or attendance upon, the prospective patient is with a view to protective, alleviative, or curative treatment. *** There is no privilege as to information acquired by a physician through the physical or mental examination of a person unless it is made in contemplation of, and as preparation for, medical care and treatment; hence, if the physician's examination of, or conference with, the person is for a purpose other than prescribing or doing any act for him in the way of medical care or treatment, the physician is not disqualified as a witness and may disclose any information so acquired concerning such person, since the relation of physician and patient does not exist under such circumstances.").

¶ 31    When asked about this at oral argument, counsel for contemnor argued that the rule is different in Illinois because Illinois has a statute providing that medical records turned over to the Secretary of State are confidential. Section 2-123(j) of the Illinois Vehicle Code (625 ILCS 5/2-123(j) (West 2016)) provides as follows:

"Medical statements or medical reports received in the Secretary of State's Office shall be confidential. Except as provided in this Section, no confidential information may be open to public inspection or the contents disclosed to anyone, except officers and employees of the Secretary who have a need to know the information contained in the medical reports and the Driver License Medical Advisory Board, *unless so directed by an order of a court of competent jurisdiction*. If the Secretary receives a medical report regarding a driver that does not address a medical condition contained in a previous medical report, the Secretary may disclose the unaddressed medical condition to the driver or his or her physician, or both, solely for the purpose of submission of a medical report that addresses the condition." (Emphasis added.)

See also *id*. § 6-908 (substantially similar).

¶ 32 This section, however, is substantially different from the physician-patient privilege found in section 8-802. The physician-patient privilege provides that information acquired by physicians and surgeons in attending patients may not be disclosed except in the specifically enumerated situations provided in the statute. See 735 ILCS 5/8-802 (West 2016). By contrast, the relevant provisions of the Vehicle Code provide that medical information submitted to the Secretary of State or the Driver's License Medical Advisory Board is confidential and may not be disclosed "*unless so directed by an order of a court of competent jurisdiction*." (Emphasis added.) 625 ILCS 5/2-123(j) (West 2016); see *id.* § 6-908. These sections do not place any restrictions on a court's ability to order the disclosure of the information. Thus, the Vehicle Code appears to leave it to the discretion of the court to determine when disclosure of the information is necessary. Here, defendant answered interrogatory number 20 instead of asserting a privilege. After defendant disclosed that Dr. Nau provides his physician's report to the Secretary of State, plaintiff subpoenaed that report, and the trial court ordered the Secretary of State to comply with the subpoena. Defendant obtained Dr. Nau's report not for the purposes of receiving treatment but for maintaining his driving privileges. A court of competent jurisdiction ordered the Secretary of State to comply with the subpoena, and this order was not part of the order appealed to the appellate court. Plaintiff is therefore entitled to use this record, and we modify the appellate court's order directing plaintiff to relinquish defendant's medical records to exclude the report obtained from the Secretary of State.

¶ 33                                    CONCLUSION

¶ 34 Pursuant to section 8-802(4) of the Code of Civil Procedure, the physician-patient privilege does not apply in any action in which the patient's physical or mental condition is "an issue." Here, neither defendant's physical nor mental condition is an issue, and therefore the privilege applies. We agree with the appellate court's judgment but disagree with the appellate court that this case presents the question of whether a plaintiff may put a defendant's medical condition at issue for purposes of section 8-802(4) of the Code of Civil Procedure. Because plaintiff did not put defendant's medical condition at issue, it was not necessary for the appellate court to decide that issue. We urge the legislature to address section 8-802(4) and to make its intentions clear. Specifically, the

- 16 -

legislature should clarify how something becomes "an issue" for purposes of this section, whether one party may put another party's physical or mental condition at issue, and if the rule is any different for civil and criminal cases.

¶ 35 For the above reasons, we affirm the appellate court's decision, which (1) reversed the circuit court's discovery order, (2) vacated the circuit court's contempt order, and (3) ordered plaintiff's counsel to promptly relinquish possession of defendant's medical records. We modify the appellate court's judgment to provide that plaintiff's counsel does not have to relinquish defendant's medical records that he received from the Secretary of State.

¶ 36 Appellate court judgment affirmed as modified.

¶ 37 Circuit court judgment affirmed in part and reversed in part.