SECOND DIVISION
March 28, 2006

No. 1-05-1854

| | | |
|---|---|---|
| AHMED KRAIMA, Individually and as Special Administrator of the Estate of Carol Kraima, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | |
| JAMES I. AUSMAN, | ) ) | Honorable |
| Defendant, | ) ) | Kathy M. Flanagan, Judge Presiding. |
| (Robert M. Collins, Contemnor-Appellant). | ) | |

JUSTICE SOUTH delivered the opinion of the court:

Attorney-contemnor, Robert Collins, appeals from an order of the circuit court of Cook County adjudging him in contempt and imposing a monetary sanction for refusing to produce the medical disability claim file submitted by his client, defendant James Ausman, M.D., to the State Universities Retirement System of Illinois (SURS).

BACKGROUND

On August 22, 2002, plaintiff brought a wrongful death and survival action against defendant in connection with the medical treatment he provided plaintiff's wife, Carol Kraima, between August 17, 2000, and her death on September 4, 2000. The complaint set forth allegations pertaining to defendant's attempt to surgically repair Ms. Kraima's internal carotid artery aneurysm at the University of Illinois at Chicago Medical Center (UIC) on August 18, 2000. Plaintiff alleged defendant was negligent for failing to use hyperthermic cardiac arrest when performing the surgery which was aborted; failing to

1-05-1854

timely reschedule a second surgery using the procedure; negligently allowing her to be discharged from UIC on August 25, 2000; and failing to have her admitted to another hospital days later for treatment.  Defendant testified during his discovery deposition that Ms. Kraima was referred to him after being diagnosed with a complex intracranial aneurysm, which was anatomically so difficult that only a few surgeons could address the problem.  Defendant further testified he had been diagnosed with psoriatic arthritis in January 2001, which involved various joints in his body, including his hands.  He stopped performing surgery in February 2001, and relinquished his position as head of neurosurgery at UIC in September 2001, for health reasons.

On February 2, 2004, plaintiff filed a motion to compel the production of defendant's medical records.  Defendant objected on the basis the documents were not relevant and were protected under the physician-patient privilege (735 ILCS 5/8-802 (West 2000)), section 8-2101 of the Code of Civil Procedure, commonly known as the Medical Studies Act (735 ILCS 5/8-2101 (West 2000)), and the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. §1320d-2 (2000)).

On April 21, 2004, the trial court denied plaintiff's motion to compel the production of defendant's medical records.  Defendant was ordered, however, to advise the trial court as to the location of the disability claim file he submitted to SURS.  Defendant subsequently produced the material for *in camera* inspection.

On September 8, 2004, plaintiff filed an amended complaint alleging, in relevant part, that defendant was negligent in accepting Ms. Kraima as a patient when he knew he had arthritis and could not provide proper medical and surgical care.  Plaintiff further

1-05-1854

alleged defendant was physically limited by arthritis when he performed the surgery on his wife in August 2000.

On May 25, 2005, after conducting an *in camera* inspection of defendant's employment records, medical records, personnel file, and the medical disability claim file, the trial court ordered him to provide plaintiff with the entire disability file. The trial court concluded that all of the pertinent information was contained therein, that it did not rise to the level of production of defendant's entire set of medical records, and there were minimal actual medical records in the disability file. The trial court found the records only formed the supporting documentation underlying the written submission forms submitted by the various physicians in connection with defendant's disability claim. The trial court found the material contained facts and information that were limited in nature and went to the issue plaintiff sought to establish with respect to the date of onset of defendant's symptoms, medications, and physical limitations.

While acknowledging defendant never raised the issue of his physical condition as a defense, the trial court concluded that any patient would be entitled to know whether the surgeon operating on him or her was impaired. The trial court further stipulated the materials would be subject to a protective order and would not be disclosed to anyone other than the parties' attorneys, their consultants, and expert witnesses, as necessary. Finally, the trial court found the records were relevant because they pertained to what the defendant referred "to as a 'constellation' of medical problems, which have some degree of interrelationship, all of which converged to cause him to cease being able to perform surgery and to perform the position for which he was hired and that gave rise to the application for disability."

For purposes of appealing the discovery order, the trial court found defendant's attorney, Robert Collins, in civil contempt for refusing to produce the disability file and imposed a monetary sanction.

1-05-1854

On appeal, contemnor argues the trial court erred in requiring him to produce defendant's medical disability file because it was protected from disclosure under Illinois's physician-patient privilege (735 ILCS 5/8-802 (West 2000)) and HIPAA. Plaintiff argues the documents are not medical records and are discoverable as relevant evidence. He further asserts the physician-patient privilege would not apply as this case involves exceptions to the privilege because defendant placed his physical condition at issue, and this entails a civil action against a medical doctor for malpractice.[1]

ANALYSIS

While discovery orders are typically reviewed only on appeal from a final judgment, when a party appeals from a contempt sanction imposed for violating a discovery order, the contempt finding is final and appealable, and presents to a court of review the propriety of that discovery order. Reda v. Advocate Health Care, 199 Ill. 2d 47, 54 (2002). Discovery rulings are generally within the trial court's discretion and will not be disturbed absent an abuse of discretion. Reda, 199 Ill. 2d at 54. The applicability of a statutory evidentiary privilege, as in the instant case, and any exceptions thereto are matters of law subject to de novo review. Reda, 199 Ill. 2d at 54.

"[T]he right to discovery is limited to disclosure of matters that will be relevant to

---

[1]Defendant's disability claim file is contained in the appellate record but was sealed from plaintiff.

˘4˘

the case

at hand in order to protect against abuses and unfairness, and a court should deny a

discovery request where there is insufficient evidence that the requested discovery is

relevant or will lead to such evidence." Leeson v. State Farm Mutual Automobile

Insurance Co., 190 Ill. App. 3d 359, 366 (1989).  A patient's medical records, even when

relevant, are generally entitled to protection from discovery under the physician-patient

privilege.  Reagan v. Searcy, 323 Ill. App. 3d 393, 395 (2001).  This privilege is found in

section 8-802 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/8-802 (West

2000)), and does not exist at common law.  Geisberger v. Willuhn, 72 Ill. App. 3d 435,

436-37 (1979).

The legislature by enacting the physician-patient privilege recognized the patient's

interest in maintaining confidentiality in his or her dealings with a physician. People ex

rel. Department of Professional Regulation v. Manos, 202 Ill. 2d 563, 575 (2002).  "This

privilege exists as to 'any information' acquired by a physician in a professional capacity

which is 'necessary' to enable him to 'serve' his patient."  Pritchard v. Swedish-American

Hospital, 191 Ill. App. 3d 388, 404 (1989), quoting Geisberger, 72 Ill. App. 3d at 437.  As

our supreme court explained in Manos:

> "The primary purpose of the physician-patient
>
> privilege is to encourage free disclosure between a doctor
>
> and a patient and to protect the patient from embarrassment
>
> and invasion of privacy that disclosure would entail.
>
> [Citation.]  The physician-patient privilege is one of trust and

1-05-1854

confidence in which the patient knowingly seeks the doctor's

assistance and the doctor knowingly accepts the person as a

patient. [Citation.] ***  As with other statutory privileges, the

physician-patient privilege is a legislative balancing between

relationships that society feels should be fostered through

the shield of confidentiality and the interests served by

disclosure of the information."  Manos, 202 Ill. 2d at 575-76.


No Illinois case has addressed the specific issue raised by contemnor as to the

applicability of the physician-patient privilege to a defendant doctor's medical disability

claim file sought by a plaintiff in a malpractice suit.  The appellate court's decisions in

Pritchard v. Swedish-American Hospital, 191 Ill. App. 3d 388 (1989), and Woodard v.

Krans, 234 Ill. App. 3d 690 (1992), however, are instructive.

In Pritchard, the plaintiffs, a husband and wife, brought a medical malpractice

action against the hospital and doctors in connection to the care the wife received while

a patient at the hospital.  During discovery, the plaintiffs sought, among other things, the

disclosure of information concerning the nature of the medical evaluations performed on

one of the defendant doctors who had been suspended and reinstated.  Specifically, the

plaintiffs sought information regarding the diagnosis, examinations, tests, or treatment

rendered on the defendant doctor.  The appellate court reversed the trial court's ruling

granting the plaintiffs' request after concluding that none of the statutory exceptions to

the physician-patient privilege applied and the medical information of the defendant

˘6˘

doctor sought by the plaintiffs fell within the scope of the privilege. Pritchard, 191 Ill. App. 3d at 392-405.

In Woodard, the plaintiff brought a cause of action against the defendant anesthesiologist and hospital alleging that she contracted tuberculosis from the anesthesiologist while he was performing a procedure upon her at the hospital. The plaintiff argued the trial court abused its discretion in refusing her request for limited discovery of the anesthesiologist's medical records because without them, a reviewing health professional could not reasonably determine the merits of her claim. Although the plaintiff waived this argument by failing to provide any case authority, and the applicable statutory provision only allowed for discovery of the plaintiff's medical records, the appellate court found the physician-patient privilege would protect most, if not all, of the information plaintiff sought through discovery. The court concluded, "as is true of exclusionary rules generally, the restrictions on discovery represent a considered judgment that interests of litigants such as plaintiff here must yield to other interests, in this case confidentiality, privacy and candid peer review within medical institutions." Woodard, 234 Ill. App. 3d at 700.

Turning to the instant case, section 8-802 of the Code provides, in pertinent part: "No physician [or] surgeon *** shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient ***." 735 ILCS 5/8-802 (West 2000). A review of defendant's disability claim file reveals numerous detailed reports completed by medical doctors concerning defendant's physical condition based upon

medical examinations and tests. There is a significant amount of private medical information contained in the reports which is not relevant to the allegations in plaintiff's amended complaint. We find no basis to support plaintiff's claim that these documents do not constitute medical records and, in accordance with Pritchard and Woodard, find the material was privileged under section 8-802.

Next, we must determine whether any of the exceptions to the physician-patient privilege contained in section 8-802 apply. Only the second, third, and fourth exceptions contained in the statute pertain to civil actions of the type here. Pritchard, 191 Ill. App. 3d at 404. The second exception states that a patient's medical information is discoverable "(2) in actions, civil or criminal, against the [physician] for malpractice." 735 ILCS 5/8-802 (West 2000). Contrary to plaintiff's assertion, this exception is " 'limited to only allow the disclosure of the records of the patient who is bringing the malpractice action,' " and does not apply here because the medical records of plaintiff's decedent were not being sought for discovery. Pritchard, 191 Ill. App. 3d at 404, quoting Parkson v. Central Du Page Hospital, 105 Ill. App. 3d 850, 855 (1982).

The remaining two exceptions would also not allow disclosure of the material sought by plaintiff. These exceptions allow disclosure "(3) with the expressed consent of the patient," or "(4) in all actions brought by [or against] the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802 (West 2000). Defendant did not expressly consent to the disclosure of the material simply by filing his disability claim with SURS. Likewise, we reject plaintiff's claim that defendant has placed his physical condition at issue, which would allow disclosure of his disability file. In order

for this exception to apply, the patient, *i.e.*, Dr. Ausman, not plaintiff, must have affirmatively placed his physical condition in issue. <u>Pritchard</u>, 191 Ill. App. 3d at 404-05. The record establishes that during defendant's deposition, plaintiff's attorney asked him when he left UIC, and defendant responded that he relinquished his position in 2001, for health reasons. He further testified that he was not having any problems with his arthritis when he performed the surgery on Ms. Kraima. Therefore, as in <u>Pritchard</u>, defendant did not affirmatively place his medical condition at issue simply because plaintiff alleged in the amended complaint that he was physically limited by arthritis when he performed the surgery.

For the foregoing reasons, we find the material contained in defendant's medical disability claim file fell within the scope of the physician-patient privilege and that none of the exceptions to the privilege apply. Consequently, the trial court erred by compelling disclosure of defendant's file. While we recognize some of the inconvenience plaintiff may experience in his attempt to discover evidence that may prove relevant to his cause of action, we reiterate that "medical malpractice plaintiffs not only have full and complete access to their own records but also can depose all persons involved in their treatment and engage experts to give opinions as to the quality of care received." <u>Pritchard</u>, 191 Ill. App. 3d at 398.

Due to our determination, it is unnecessary for us to address contemnor's claim that the documents were also protected from disclosure under HIPPA.

Accordingly, the circuit court's order compelling defendant to produce his medical disability claim file and the contempt order imposing a sanction for failure to do so are

1-05-1854

reversed, and we remand this cause for further proceedings consistent with this opinion.


Reversed and remanded.

GARCIA, P.J., and WOLFSON, J., concur.