# Illinois Official Reports

## Supreme Court

***Palm v. Holocker*, 2018 IL 123152**

| | |
|---|---|
| Caption in Supreme Court: | SCARLETT PALM, Appellant, v. RUBEN HOLOCKER (Karl Bayer, Appellee). |
| Docket No. | 123152 |
| Filed | December 13, 2018 |
| Modified upon denial of rehearing | February 28, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Marshall County, the Hon. Thomas A. Keith and the Hon. Michael P. McCuskey, Judges, presiding. |
| Judgment | Appellate court judgment affirmed as modified. Circuit court judgment affirmed in part and reversed in part. |
| Counsel on Appeal | Christopher H. Sokn, of Kingery Durree Wakeman & O'Donnell, Associates, of Peoria, for appellant. |
| | Daniel E. Compton, of Compton Law Group, of Elgin, for appellees. |
| | Jessica R. Sarff, of Heyl, Royster, Voelker & Allen, of Peoria, for *amicus curiae* Illinois Association of Defense Trial Counsel. |

Justices          JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1     At issue is whether contemnor, Karl Bayer, was entitled to assert the physician-patient privilege (735 ILCS 5/8-802 (West 2016)) in this negligence case. Bayer refused to provide answers to two interrogatories seeking the names of health care providers who had treated his client, defendant Ruben Holocker. The trial court ordered contemnor to provide answers to the interrogatories, and when contemnor refused to do so, the court held him in contempt. Contemnor appealed the contempt order, and the appellate court reversed the discovery order and vacated the contempt order. The appellate court held that the information was privileged because defendant's medical condition was not an issue in the case. 2017 IL App (3d) 170087. Plaintiff appeals, and we affirm the appellate court's judgment as modified.

¶ 2                               BACKGROUND

¶ 3     On October 18, 2014, defendant, Ruben Holocker, struck plaintiff, Scarlett Palm, with his vehicle. At the time, plaintiff was a pedestrian and was crossing the intersection of 5th Street and Ida Street in Lacon.

¶ 4     Plaintiff filed a personal injury complaint against defendant in the circuit court of Marshall County. Plaintiff alleged that defendant was negligent in one or more of the following ways:

"a. Failed to keep and maintain a safe and proper lookout as he drove his vehicle into the intersection;

b. Drove his vehicle and turned left onto 5th Street from Ida [Street] when he failed to stop at the stop sign at Ida; and

[c.] Failed to yield the right-of-way to Plaintiff, who had the preferred right-of-way while walking across 5th Street at said intersection, and thereby violated 625 ILCS 5/11-1204."

¶ 5     Defendant filed an answer in which he denied all three of the above allegations of negligence. Additionally, defendant filed an affirmative defense in which he alleged that plaintiff was more than 50% responsible for her injuries. Defendant alleged that plaintiff was negligent in that she:

"a) Improperly crossed a street when it was unsafe to do so;

b) Failed to keep a proper lookout; and

c) Was under the influence of an alcoholic or narcotic substance that impaired her ability at the time of the accident."

Defendant asserted that any recovery that plaintiff received should be reduced by that portion of contributory negligence attributable to plaintiff.

¶ 6        Plaintiff served Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) interrogatories on defendant, including the following:

> "20. Do you have any medical and/or physical condition which required a physician's report and/or letter of approval in order to drive? If so, state the nature of the medical and/or physical condition, the physician or other health care professional who issued the letter and/or report, and the names and addresses of any physician or other health care professional who treated you for this condition prior to the occurrence.
>
> 21. State the name and address of any physician, ophthalmologist, optician or other health care professional who performed any eye examination of you within the last five (5) years, and the dates of each such examination.
>
> 22. State the name of any physician or other health care professional who examined and/or treated you within the last ten (10) years, and the dates of each such examination."

¶ 7        Defendant answered interrogatory number 20 by stating, "Yes, diabetic reasons, Dr. Christopher Nau, 4th [S]treet, Chillicothe, IL 274-4336." However, he refused to answer numbers 21 and 22. For each of these, he provided the following objection: "The defendant objects to the question as it violates [HIPAA], doctor-patient privilege, and the Defendant has not placed his medical condition at issue in this matter."

¶ 8        Plaintiff filed a motion to strike defendant's objections and compel defendant's answers to interrogatories 21 and 22. At a hearing on the motion to compel, plaintiff argued that defendant's ability to see and to drive was at issue because he drove his vehicle into a pedestrian. Plaintiff's counsel explained to the trial court why he believed that defendant's ability to see was at issue:

> "MR. O'DONNELL: And Judge, here, just by way of background, a few weeks after this happened our client got a Facebook post from someone that said that the defendant in this case is legally blind, from someone who knows him, and that he has had other—a few other collisions that he's never reported to anyone because of the fear of a revocation of his privileges based upon his difficulties with vision."

¶ 9        Contemnor argued that defendant's medical information was privileged because the defense was not putting defendant's medical condition at issue. Contemnor acknowledged that defendant requires a doctor's note to drive but explained that the defense was not claiming that defendant suffered a "sudden and unexpected attack." The court then asked about the allegation that defendant failed to keep a proper lookout. Contemnor said that he believed the testimony would show that his client was waving to a pedestrian by the side of the road and was simply not looking at plaintiff. Contemnor argued that vision was not at issue because defendant was not even looking in plaintiff's direction at the time. The court granted plaintiff's motion, ordered defendant to answer the interrogatories, and entered a Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 1320d *et seq.* (2012)) order applicable to plaintiff and defendant. Plaintiff had previously subpoenaed defendant's medical records from Dr. Nau and the Secretary of State, and the court ordered the Secretary of State to comply with the subpoena.

¶ 10       Defendant still refused to answer the interrogatories, and plaintiff moved for sanctions. At the hearing on the motion for sanctions, contemnor argued that Illinois case law provides that a defendant's medical information is privileged unless the defendant puts his medical condition

- 3 -

in issue. Contemnor argued that he was not putting defendant's medical condition at issue. The trial judge asked plaintiff's counsel if he contended that defendant's answer that he needed a doctor's note to drive because of diabetic reasons had put defendant's possible visual impediment at issue. Plaintiff's counsel responded that there was "no question" that defendant's sight was at issue because he had hit a pedestrian in broad daylight. Contemnor told the court that he believed defendant would testify in his deposition that the reason he did not see plaintiff was that he was waving to a friend of his on the corner. Plaintiff's attorney told the court that he had subpoenaed defendant's driving records and that defendant had been involved in seven or eight different collisions before the present one and he wanted to find out if defendant was using multiple optometrists to find one who would clear him to drive. Plaintiff also wanted to subpoena Dr. Nau's records. The trial court said that it did not want plaintiff going on a fishing expedition but that it did believe that sight was an issue based on the fact that defendant had diabetes and had not seen the plaintiff when he struck her. Contemnor disagreed and explained that the reason for the doctor's permission might be to make sure that defendant's blood sugar was controlled and that he was not having episodes of low blood sugar. Contemnor also pointed out that defendant had a valid driver's license at the time of the accident. The court found that plaintiff had legitimate reasonable cause to believe that defendant had sight problems that could have been related to the accident and that plaintiff had "a right to look for that." The court held defendant's attorney in contempt and imposed a $5-per-day fine until contemnor submitted answers to the interrogatories.

¶ 11    Contemnor appealed, and the appellate court reversed the contempt finding. The court first noted a potential procedural problem. The appeal was from an order holding contemnor in contempt for failing to provide answers to two interrogatories. The parties briefed the broader issue of whether the physician-patient privilege applied at all in this case, not whether it applied to the two interrogatories. 2017 IL App (3d) 170087, ¶ 15. However, the court found that it should address the briefed issue in the interests of the orderly administration of justice and to avoid an inevitable second appeal. *Id.* ¶ 16. Moreover, the court noted that a ruling that the privilege applied would render the interrogatories pointless. *Id.* ¶ 15. If plaintiff could not obtain defendant's medical records, the answers to the two interrogatories would not lead to discoverable information. *Id.* ¶ 29.

¶ 12    The court held that the records were privileged under section 8-802 of the Code of Civil Procedure and that the exception provided in subsection (4) did not apply. This exception provides that the privilege does not apply "in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). Plaintiff argued that "an issue" as used in this subsection simply means relevant. The appellate court disagreed. The court noted that irrelevant information is neither subject to disclosure nor admissible in evidence and, if the legislature meant "an issue" to mean "relevant," it would have simply said that the privilege does not apply in any litigation. 2017 IL App (3d) 170087, ¶ 22. The court held that section 8-802(4) applies only when a defendant affirmatively places his or her health at issue and that a plaintiff cannot waive someone else's privilege. *Id.* ¶ 24. Relying on *Kraima v. Ausman*, 365 Ill. App. 3d 530, 536 (2006), and *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388, 405 (1989), the court held that "[n]either the nature of a plaintiff's cause of action nor factual allegations in a plaintiff's complaint waive a defendant's physician-patient privilege." 2017 IL App (3d) 170087, ¶ 24. The court noted that Illinois Supreme Court Rule 215(d)(1) (eff. Mar. 28, 2011), which

- 4 -

addresses when a court may order a party to undergo a mental or physical exam, provides that a court may do so when a party's " 'mental or physical condition' " is " 'placed in issue.' " 2017 IL App (3d) 170087, ¶ 23. The committee comments provide that " '[m]ere allegations are insufficient to place a party's mental or physical condition in "issue." ' " (Emphasis omitted.) *Id.* (quoting Ill. S. Ct. R. 215(d) Committee Comments (adopted Mar. 28, 2011)). The court inferred from this that "in issue" does not mean "relevant." *Id.*[1]

¶ 13        Thus, the court determined that defendant's medical records were privileged and that he had not placed his physical or mental condition at issue. The court determined that defendant's medical condition had no bearing on his liability because "he either drove negligently or he did not." *Id.* ¶ 26. The court explained that, if defendant "possessed a valid license and operated his vehicle as a reasonably prudent person would, then he is not liable for [plaintiff's] injuries regardless of his health or vision. If [defendant] drove negligently and proximately caused [plaintiff's] injuries, then he is liable." *Id.* Because defendant had not affirmatively placed his health in issue, the court determined that the interrogatory answers were not likely to lead to discoverable information. *Id.* ¶ 29. Thus, the court reversed the circuit court's discovery order, ordered plaintiff's counsel to relinquish any of defendant's medical records that he had obtained, and vacated the contempt order.[2] *Id.* ¶¶ 29, 31.

¶ 14        We allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017).

¶ 15        On December 13, 2018, this court filed an opinion affirming the appellate court's judgment as modified. Our opinion declined to reach the issue of whether a plaintiff may waive a defendant's physician-patient privilege by putting a defendant's physical or mental condition at issue because, on the record before us, plaintiff had not put defendant's physical or mental condition at issue. Thus, we held that plaintiff was properly ordered to relinquish defendant's medical records. However, we modified the appellate court's judgment to allow plaintiff to keep the records she had obtained from the Secretary of State. Plaintiff then filed a petition for rehearing in which she raised two issues. First, plaintiff claimed that this court had no jurisdiction to order her to relinquish defendant's medical records because she had obtained these while the case was on appeal. The records were obtained pursuant to the HIPAA order, which was not part of this appeal. Accordingly, plaintiff insisted that the court had no jurisdiction to order her to relinquish these records.[3] Second, plaintiff argued that this court erred in failing to address the fact that defendant was using the HIPAA order to subpoena plaintiff's medical records. This is the same order over which plaintiff insists that the court does not have jurisdiction.

---

[1]We note that Rule 215(d)(1) does not merely use the phrase "in issue" but rather sets forth how something becomes "an issue" for purposes of the rule. See Illinois Supreme Court Rule 215(d)(1) (eff. Mar. 28, 2011) (explaining that the court may order a physical or mental examination of a party "where conflicting medical testimony, reports or other documentation has been offered as proof and the party's mental or physical condition is thereby placed in issue").

[2]Plaintiff's counsel explained at oral argument that he had obtained all of defendant's medical records that he needs. Counsel explained that, because Lacon is a small town, he was able to learn from people in the community which doctors and optometrists defendant has seen.

[3]At oral argument, plaintiff's counsel represented to this court that his possession of these records was the very reason the court should reach the question of section 8-802(4)'s applicability to this case and argued that the court would not be rendering an advisory opinion by doing so.

¶ 16 Through documents provided with plaintiff's petition for rehearing, this court now has a clearer picture of the procedural state of this case and of how plaintiff obtained defendant's medical records. As set forth above, the parties did not limit their arguments in the appellate court to the two interrogatories that formed the basis of the contempt order. Rather, they briefed and argued the broader question of whether section 8-802(4) applies at all in this case. This statute applies when a physician or surgeon is asked to disclose medical information, which is something that had not yet happened in this case. Nevertheless, the appellate court decided to resolve the case the way the parties briefed it, for the reason that plaintiff would eventually seek to subpoena defendant's medical records. 2017 IL App (3d) 170087, ¶¶ 15-16. Plaintiff understood this when she brought the case here for further review.

¶ 17 While the case was on appeal and the appellate court was being asked by both parties to resolve the question of whether section 8-802(4) applied to this case, plaintiff went ahead and subpoenaed defendant's medical records. Defendant moved to strike the subpoenas on the basis that the appellate court was currently deciding the issue and that plaintiff was attempting to backdoor the entire proceeding while waiting for the appellate court to rule. Defendant asked the trial court to strike the subpoenas until such time as the appellate court reversed the trial court's decision or the supreme court ruled in the matter. The trial court denied the motion and then denied defendant's request for Rule 304(a) language.[4] Plaintiff obtained defendant's medical records and then prepared an amended complaint based on the information she learned from those records.

¶ 18 So this is the procedural state we now find ourselves in. This court has issued an opinion holding that neither party has put defendant's medical condition in issue and thus the exception to the physician-patient privilege found in section 8-802(4) does not apply. Therefore plaintiff should not be able to access defendant's medical records. In the meantime, while that issue was on appeal, the trial court allowed plaintiff to subpoena those very records, and now plaintiff has prepared an amended complaint based on information contained in those records. Given this, we believe the most appropriate course of action is to modify our original opinion to address the issue that plaintiff originally brought to this court, but which we declined to address—whether a plaintiff may put a defendant's physical or mental condition at issue so as to waive the defendant's physician-patient privilege.

¶ 19                                                    ANALYSIS

¶ 20 Section 8-802 of the Code of Civil Procedure provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2016). The statute then lists 14 situations in which the privilege does not apply. The physician-patient privilege exists to encourage disclosure between a doctor and a patient and to protect the patient from invasions of privacy. See *Reagan v. Searcy*, 323 Ill. App. 3d 393, 395 (2001). The purpose of the privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient.

_____

[4]It is not clear whether the trial court was aware that the appellate court was being asked to resolve the broader question of whether section 8-802(4) applied at all in this case, rather than the narrower question of whether defense counsel was properly held in contempt for failing to provide answers to two interrogatories.

See *People v. Wilber*, 279 Ill. App. 3d 462, 467 (1996). The legislature has recognized that patients have an interest in maintaining confidentiality in their medical dealings with physicians. *People v. Florendo*, 95 Ill. 2d 155, 158 (1983).

¶ 21    Resolution of this appeal turns on the meaning of "an issue" in section 8-802(4), which provides that the privilege does not apply in any action wherein "the patient's physical or mental condition is an issue." 735 ILCS 5/8-802(4) (West 2016). The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* It is improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997). If the meaning of an enactment is unclear from the statutory language, the court may consider the purpose behind the law and the evils the law was designed to remedy. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. The statute should be read as a whole and construed so as to give effect to every word, clause, and sentence; we must not read a statute so as to render any part superfluous or meaningless. *People ex rel. Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23. Words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279-80 (2003). We have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended. *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 19. Statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 19. Our review is *de novo*. *Id.* ¶ 11.

¶ 22    Plaintiff argues that the appellate court impermissibly added language to section 8-802(4). Plaintiff points out that this section merely requires that the patient's physical or mental condition be "an issue" and it does not say that only the patient may put his or her medical condition at issue. Plaintiff contends that "in issue" is synonymous with "relevant." Thus, plaintiff contends that section 8-802(4) simply means that medical records may be disclosed in any action in which a party has a relevant physical or mental condition. Plaintiff further points out that the appellate court did not discuss any of the opinions filed after *Kraima* and *Pritchard* in which the courts have applied section 8-802(4) when the State has put a defendant's medical condition in issue. See *People v. Beck*, 2017 IL App (4th) 160654 (postaccident medical records in aggravated driving under the influence (DUI) proceeding); *People v. Botsis*, 388 Ill. App. 3d 422 (2009) (medical records in reckless homicide proceeding); *People v. Popeck*, 385 Ill. App. 3d 806 (2008) (postaccident medical records in DUI proceeding); *In re Detention of Anders*, 304 Ill. App. 3d 117 (1999) (mental health evaluation in Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West Supp. 1997)) proceeding); *People v. Nohren*, 283 Ill. App. 3d 753 (1996) (blood test results in DUI proceeding); *Wilber*, 279 Ill. App. 3d 462; (postaccident statements to paramedics in aggravated DUI proceeding); *People v. Krause*, 273 Ill. App. 3d 59 (1995) (postaccident statements to paramedics in aggravated DUI proceeding).

- 7 -

¶ 23    Defendant responds by arguing that civil and criminal cases have separate rules for how a patient's physical or mental condition becomes "an issue" for purposes of section 8-802(4). Defendant contends that, in a civil case, the exception applies only when a party puts his or her own physical condition at issue by affirmative pleading. Thus, a plaintiff who files a personal injury action necessarily puts his or her own physical or mental condition at issue, and a defendant in a civil case puts his or her own physical or mental condition at issue by asserting it as part of a defense. By contrast, in criminal cases, something may become "an issue" if the legislature has made it an element of the offense.[5] This is how defendant reconciles these disparate lines of cases. Defendant explains *In re Detention of Anders*, 304 Ill. App. 3d 117, by arguing that the criminal rule would apply in a Sexually Violent Persons Commitment Act proceeding because the respondent's mental condition is the subject of the commitment proceedings.

¶ 24    Plaintiff points out, however, that section 8-802(4) makes no distinction between civil and criminal cases and simply uses the language "in all actions." In other subsections of section 8-802, the legislature used language such as "in trials for homicide" (735 ILCS 5/8-802(1) (West 2016)), "in actions, civil or criminal" (*id.* § 8-802(2), (7)), "in any criminal action" (*id.* § 8-802(6)), "in prosecutions" (*id.* § 8-802(9), (10)), and "in criminal actions" (*id.* § 8-802(11)). Thus, the legislature was very specific when it wanted to draw a distinction between civil and criminal cases, and subsection (4) contains no such distinction.[6] Indeed, subsection (6) makes defendant's interpretation problematic. This exception provides that medical records may be disclosed "in any criminal action where the charge is either first degree murder by abortion, attempted abortion or abortion." *Id.* § 8-802(6). If subsection (4) made medical records discoverable in all criminal actions wherein a defendant's physical condition is an element of the offense, then subsection (6) would seem to be superfluous. Thus, contrary to defendant's argument, there seems to be a genuine conflict between how the courts have applied subsection (4) in civil and criminal cases. In civil cases, the courts have held that only the patient may waive his or her own privilege by putting his or her physical or mental condition at issue, while in the criminal context, the courts have allowed the State to waive a defendant's privilege by putting his or her physical or mental condition at issue.

¶ 25    It appears that an overwhelming majority of courts have agreed with the appellate court below that a plaintiff may not waive a defendant's privilege by putting the defendant's medical condition at issue. In *Griego v. Douglas*, No. CIV 17-0244 KBM/JHR, 2018 WL 2376330

[5]Defendant's theory does not work for all of the cases. For instance, a defendant's physical or mental condition is not an element of the offense of reckless homicide. See 720 ILCS 5/9-3(a) (West 2016). What the court held in *Botsis* was that the defendant's medical condition was an issue because it was *relevant* to the issue of recklessness. *Botsis*, 388 Ill. App. 3d at 435. But this is precisely the definition of "an issue" that the appellate court rejected here. See 2017 IL App (3d) 170087, ¶¶ 22-23 (explaining that "an issue" in section 8-802(4) does not mean "relevant"). Defendant also categorically rejects the argument that "an issue" means "relevant."

[6]In the previous version of the statute, there was no question that subsection (4) applied only to civil cases. Subsection (4) previously read, "in all civil suits brought by or against the patient, his personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his estate wherein the patient's physical or mental condition is an issue." Ill. Rev. Stat. 1981, ch. 51, ¶ 5.1(4). When this section was recodified as part of the Illinois Compiled Statutes, "civil suits" was replaced with "actions." See 735 ILCS 5/8-802(4) (West 2016).

(D. N.M. May 24, 2018), a federal district court was confronted with this issue. *Griego* was a wrongful death case arising out of a traffic accident in which the plaintiffs wanted access to the defendant's medical records. The plaintiffs had alleged in the suit that the defendant had failed to yield the right of way, made an improper turn, and was inattentive while driving. *Id.* at *1. The plaintiffs contended that the defendant's overall medical condition and especially his quality of vision were highly relevant to whether he was negligent. The plaintiffs further contended that the defendant's medical condition was at issue because he was over 75 and drivers in New Mexico over that age are required to provide a physician's report when renewing a driver's license. *Id.* at *2. The defendant did not rely on a medical condition as part of his defense. Rather, he simply denied liability. *Id.* at *1.

¶ 26    Before turning to the specific provisions of New Mexico law, the court conducted a survey of how the various states had dealt with this issue. The court concluded that "[m]ost courts that have addressed the matter have found that a defendant's medical records are privileged, and that a defendant does not waive the privilege merely by driving, denying fault, or asserting comparative negligence." *Id.* at *5.[7] The only state the court could find that had held that a plaintiff could put a defendant's physical condition at issue so as to waive the defendant's privilege was North Carolina. *Id.* at *6. The court then considered New Mexico law and noted that "the physician-patient privilege has enjoyed considerable deference, with substantial protection provided to all but those patients who explicitly waived it." *Id.* at *7. The court noted that New Mexico had even gone so far as holding that in a DUI prosecution a defendant did not waive the privilege by pleading not guilty. *Id.* at *6 (citing *State v. Roper*, 921 P.2d 322, 326 (N.M. Ct. App. 1996). The court thus determined that the plaintiffs were not entitled to a general release of the defendant's medical records:

> "In summary, the general rule is that a defendant driver in a civil case does not waive the physician-patient privilege simply by denying fault or asserting comparative negligence. Additionally, the general rule is that a *plaintiff* may not effect a waiver of a *defendant's* privilege even where there is evidence that the defendant may have been impaired at the time of the collision." (Emphases in original). *Id.* at *7.

See also *Chung v. Legacy Corp.*, 548 N.W.2d 147, 150 (Iowa 1996) (collecting cases); *Muller v. Rogers*, 534 N.W.2d 724, 726 (Minn. Ct. App. 1995) ("Muller has cited no statute or caselaw, and our research has disclosed none, holding that a *plaintiff* may place a *defendant's* physical condition in controversy and thereby effect a waiver of the defendant's medial privilege by asserting that the defendant was impaired on the day of the accident." (Emphases in original.)).

¶ 27    We note, however, that the issue was much easier for *Griego* than it is for us. The New Mexico rule words the relevant exception to the physician-patient privilege as follows:

> "If a patient relies on a physical, mental, or emotional condition as part of a claim or defense, no privilege shall apply concerning confidential communications made relevant to that condition." N.M. S. Ct. R. 11-504(D)(3) (eff. Dec. 31, 2013).

---

[7]See also 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 103, at 633 (7th ed. 2013) ("With respect to defenses, a distinction is clearly to be seen between the allegation of a physical or mental condition, which will effect the waiver, and the mere denial of such a condition asserted by the adversary, which will not.").

Section 8-802(4) simply provides that the privilege does not apply in any action in which a patient's medical condition is "an issue." As *Griego* noted, North Carolina has taken the opposite view and held that a plaintiff may put a defendant's medical condition at issue so as to waive the defendant's privilege. But the North Carolina cases are not particularly helpful because the North Carolina statute does not contain a list of exceptions where the privilege does not apply. Rather, after stating the privilege, the statute provides that

> "[a]ny resident or presiding judge in the district, either at the trial or prior thereto, or the Industrial Commission pursuant to law may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice." N.C. Gen. Stat. § 8-53 (2017).

Thus, when a plaintiff has put a defendant's medical condition at issue, the North Carolina courts have relied on this provision to hold that a trial court did not abuse its discretion in ordering the production of the defendant's medical records. See *Roadway Express, Inc. v. Hayes*, 631 S.E.2d 41, 45-46 (N.C. Ct. App. 2006).

¶ 28        The legislature's intent in enacting section 8-802(4) is not clear, and the cases interpreting that section are inconsistent in applying it. For the following reasons, we agree with defendant's interpretation of the statute. First, as cases such as *Griego* and *Chung* have noted, there is near universal agreement among courts that the physician-patient privilege belongs to the patient and therefore only the patient may waive it by putting his physical or mental condition at issue. As stated in McCormick on Evidence, "a patient *voluntarily* placing his or her physical or mental condition in issue in a judicial proceeding waives the privilege with respect to information relative to that condition." (Emphasis added.) 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 103, at 631 (7th ed. 2013). In *Petrillo v. Syntax Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986), the appellate court explained that a patient can consent to the disclosure of his medical records in one of two ways:

> "The consent that is necessary before a patient's confidences may be properly disclosed to third parties is, of course, two-fold in nature. The consent can take the form of an express consent (*e.g.*, a written waiver) or it can be implied at law by the patient's conduct. In this regard, we note that when a patient files suit, he implicitly consents to his physician releasing any of the medical information related to the mental or physical condition which the patient has placed at issue in the lawsuit ***." *Id*. at 591.

See also 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 103, at 632 (7th ed. 2016) ("A claim for damages for personal injuries is of course the paradigm example, and will clearly waive the privilege in all jurisdictions where such waiver by filing is possible at all.").

¶ 29        Second, plaintiff's interpretation is problematic when viewed in context of the entire statute. If, as plaintiff insists, section 8-802(4) is a broadly applicable section, allowing disclosure in every case in which a patient's medical condition is "relevant," then other subsections of section 8-802 are redundant and unnecessary. For instance, subsections (6) ("in any criminal action where the charge is either first degree murder by abortion, attempted abortion or abortion"); (9) ("in prosecutions where written results of blood alcohol tests are admissible pursuant to section 11-501.4 of the Illinois Vehicle Code" (625 ILCS 5/11-501.4 (West 2016))); and (10) ("in prosecutions where written results of blood alcohol tests are admissible under section 5-11a of the Boat Registration and Safety Act" (625 ILCS 45/5-11a, renumbered as 625 ILCS 45/5-16a (West 2016))) would seem to be unnecessary if subsection

(4) allows the records to be disclosed in any proceeding in which the patient's physical or mental condition is relevant. See 735 ILCS 5/8-802 (West 2016). The sheer number of codified exceptions to the privilege suggests that section 8-802(4) must have a narrower scope than plaintiff contends.

¶ 30 Third, plaintiff's interpretation renders the privilege virtually meaningless. Consider again what happened in this case. The plaintiff represented to the trial court that she had learned through a hearsay statement posted on Facebook that defendant is legally blind. Based on this representation, plaintiff was allowed to vitiate defendant's privilege, and she now seeks to file an amended complaint based on the information found in defendant's medical records. It is difficult to imagine that this is how the legislature intended section 8-802(4) to work. We note further that at the time plaintiff was allowed to obtain defendant's medical records she had not even pleaded that defendant had a relevant medical condition. Although plaintiff construes "an issue" to mean relevant, the plain meaning of the term "issue" would at least require the condition to be pleaded. Webster's defines "issue" as "a point in question of law or fact; *specif*: a single material point of law or fact depending in a suit that is affirmed by one side and denied by the other and that is presented for determination at the conclusion of the pleadings." Webster's Third New International Dictionary 1201 (1993); see also A Dictionary of Modern Legal Usage 470 (2d ed. 1995) (defining "facts in issue" as "facts that, in the pleadings, are affirmed on one side and denied on the other"). Black's defines "issue" as "[a] point in dispute between two or more parties" (Black's Law Dictionary 907 (9th ed. 2009)) and then quotes the following definition from Corpus Juris Secundum:

> " 'In federal civil procedure, an issue is a single, certain, and material point arising out of the allegations and contentions of the parties; it is matter affirmed on one side and denied on the other, and when a fact is alleged in the complaint and denied in the answer, the matter is then put in issue between the parties.' " *Id.* (quoting 35A C.J.S. Federal Civil Procedure § 357, at 541 (1960)).

Nevertheless, even if plaintiff had pleaded a relevant medical condition, we do not believe that this is sufficient to waive defendant's privilege. Allowing a plaintiff to put defendant's medical condition at issue simply by making an allegation in a pleading would leave in place all of the problems discussed above. Such an interpretation would allow one party to waive another party's privilege, and that interpretation would be problematic in light of other provisions of the statute.

¶ 31 Fourth, the courts have been consistent in holding that, in civil cases, only the patient may put his or her own medical condition at issue. See *Kraima,* 365 Ill. App. 3d 530; *Pritchard*, 191 Ill. App. 3d 388. Although the legislature has amended section 8-802 numerous times since those decisions were issued, it has never amended subsection (4) in response to those decisions. As we explained in *In re Marriage of Mathis*, 2012 IL 113496, ¶ 25:

> "We assume not only that the General Assembly acts with full knowledge of previous judicial decisions, but also that its silence on this issue in the face of decisions consistent with those previous decisions indicates its acquiescence to them. See *People v. Villa*, 2011 IL 110777, ¶ 36 ('the judicial construction of the statute becomes a part of the law, and the legislature is presumed to act with full knowledge of the prevailing case law and the judicial construction of the words in the prior enactment')."

Section 8-802 has been amended 10 times since *Pritchard* was decided and 8 times since *Kraima* was decided, and the legislature has not altered the language of subsection (4) in response to those decisions. Thus, we presume that the legislature has acquiesced in that interpretation. If the legislature disagrees with our interpretation, it is free to amend the statute.

¶ 32   Plaintiff raises policy concerns implicated by applying the statute in this matter, including that patients will be able to hide relevant medical conditions. But privileges by their very nature prevent relevant information from being disclosed. As the appellate court explained when applying the physician-patient privilege in *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 444 (1990):

> "In making our determination, we are aware that much of the information contained in the nonparty patient's medical records would be relevant to the issue involved in this case. Unfortunately for plaintiff, the privilege involved in this case will often act to bar what is clearly relevant and material information. See [*Laurent v. Breiji*, 74 Ill. App.3d 214, 217 (1979)], ('[i]mplicit in every testimonial privilege is the assumption that the privileged matter may indeed be highly probative of the issues in dispute')."

In *Dillenbeck v. Hess*, 536 N.E.2d 1126, 1133 (N.Y. 1989), the New York Court of Appeals stated:

> "Moreover, the mere fact that the privilege presents an obstacle to plaintiffs' discovery of legally pertinent information that would assist them in proving their claim is not, as the dissent seems to suggest, evidence that the privilege is not properly recognized in this case. Indeed, it is inherent in the very nature of an evidentiary privilege that it presents an obstacle to discovery and it is precisely in those situations where confidential information is sought in advancing a legal claim that such privilege is intended to operate. *Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated.*" (Emphasis added.)

Thus, while we acknowledge that construing the statute in the manner defendant suggests will keep relevant information from the fact-finder, that is simply inherent in the nature of privileges, and it is not justification for construing the statute in a way to render the privilege virtually meaningless for parties to litigation. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we order plaintiff to relinquish the records obtained from defendant's medical providers in a manner that will protect defendant's privacy. As for plaintiff's complaint that defendant has been using the HIPAA order to subpoena plaintiff's medical records, we note that plaintiff put her physical condition at issue by filing a complaint for personal injuries. Any objections plaintiff has to the scope of defendant's subpoenas are for the trial court to resolve.

¶ 33   In sum, the question facing this court is whether the legislature's intent in enacting subsection (4) was to codify the near-universally recognized principle of waiver by implied consent or to enact a broadly applicable exception allowing the privilege to be vitiated any time a party's medical condition is relevant. For the reasons set forth above, we believe it was the former. We acknowledge, however, the confusing wording of the statute when read as a whole, along with an arguable inconsistency in how some cases have applied this exception. We therefore call upon the legislature to address subsection (4) and to make its intentions clear. We express no opinion on those criminal cases that have held that subsection (4) applies when

- 12 -

the legislature has made a party's physical or mental condition an element of an offense, as that issue is not before us.

¶ 34     We further hold, however, that plaintiff does not have to relinquish Dr. Nau's report that plaintiff obtained from the Secretary of State. We note that defendant asserted the privilege only with respect to interrogatories 21 and 22. Defendant did *not* assert the privilege with respect to interrogatory 20 and instead disclosed the name of the doctor who provides the report that allows him to renew his driver's license. As noted above, the purpose of the physician-patient privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient. When a patient obtains a physician's report in order to maintain his driving privileges, he is not seeking treatment. Courts have drawn on this distinction to hold that the physician-patient privilege does not apply to medical records used to obtain driving privileges.

¶ 35     For instance, in *Muller*, 534 N.W.2d 724, the court held that the defendant's medical records were privileged in a wrongful death case arising out of a traffic accident because the defendant had simply denied liability and was not relying on a medical condition as part of his defense. The court held that a plaintiff may not place a defendant's physical condition in controversy and thereby effect a waiver of the defendant's privilege. *Id.* at 726. However, the court explained that the same consideration would not apply to records that the defendant had turned over to the Department of Public Safety for the " 'benefit of keeping a driver's license or obtaining handicapped license plates.' " *Id.* at 727. The court explained that disclosing confidential information to third parties waives the privilege. *Id.* The court further explained that the privilege exists to protect confidential information acquired by a physician seeing a patient for the purpose of providing treatment and that the "purpose of the defendant's disclosure to the Department of Public Safety was to obtain driving or licensing privileges, not to obtain medical treatment." *Id.*; see also, *e.g.*, *Matysik v. Judd Transportation, L.L.C.*, No. 1:14-cv-1889-TWP-DKL, 2016 WL 559217, at *1 (S.D. Ind. Feb. 2, 2016) (defendant's medical records privileged in suit alleging that he suffered a medical condition that caused him to fall asleep at the wheel, but privilege does not extend to record of his department of transportation physical examination because it was for the purpose of "meeting federal regulatory requirements and not for purposes of diagnosis and treatment"); *Jackson v. Wiersema Charter Service, Inc.*, No. 4:08CV00027 JCH, 2009 WL 1798389, at *1 (E.D. Mo. June 24, 2009) ("[r]ecords pertaining to a [commercial driver's license] medical examination are not within the scope of the physician-patient privilege"); *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 595-96 (Mo. Ct. App. 1990) (medical examination for purposes of satisfying federal regulations not within the scope of physician-patient privilege because privilege extends only to information acquired by physician for purposes of prescribing and treatment); Clinton DeWitt, Privileged Communications Between Physician and Patient 104-05 (1958) ("As a general rule, the relationship of physician and patient does not exist unless the physician's consultation with, or attendance upon, the prospective patient is with a view to protective, alleviative, or curative treatment. *** There is no privilege as to information acquired by a physician through the physical or mental examination of a person unless it is made in contemplation of, and as preparation for, medical care and treatment; hence, if the physician's examination of, or conference with, the person is for a purpose other than prescribing or doing any act for him in the way of medical care or treatment, the physician is

not disqualified as a witness and may disclose any information so acquired concerning such person, since the relation of physician and patient does not exist under such circumstances.").

¶ 36 When asked about this at oral argument, counsel for contemnor argued that the rule is different in Illinois because Illinois has a statute providing that medical records turned over to the Secretary of State are confidential. Section 2-123(j) of the Illinois Vehicle Code (625 ILCS 5/2-123(j) (West 2016)) provides as follows:

> "Medical statements or medical reports received in the Secretary of State's Office shall be confidential. Except as provided in this Section, no confidential information may be open to public inspection or the contents disclosed to anyone, except officers and employees of the Secretary who have a need to know the information contained in the medical reports and the Driver License Medical Advisory Board, *unless so directed by an order of a court of competent jurisdiction*. If the Secretary receives a medical report regarding a driver that does not address a medical condition contained in a previous medical report, the Secretary may disclose the unaddressed medical condition to the driver or his or her physician, or both, solely for the purpose of submission of a medical report that addresses the condition." (Emphasis added.)

See also *id.* § 6-908 (substantially similar).

¶ 37 This section, however, is substantially different from the physician-patient privilege found in section 8-802. The physician-patient privilege provides that information acquired by physicians and surgeons in attending patients may not be disclosed except in the specifically enumerated situations provided in the statute. See 735 ILCS 5/8-802 (West 2016). By contrast, the relevant provisions of the Vehicle Code provide that medical information submitted to the Secretary of State or the Driver's License Medical Advisory Board is confidential and may not be disclosed "*unless so directed by an order of a court of competent jurisdiction*." (Emphasis added.) 625 ILCS 5/2-123(j) (West 2016); see *id.* § 6-908. These sections do not place any restrictions on a court's ability to order the disclosure of the information. Thus, the Vehicle Code appears to leave it to the discretion of the court to determine when disclosure of the information is necessary. Here, defendant answered interrogatory number 20 instead of asserting a privilege. After defendant disclosed that Dr. Nau provided his physician's report to the Secretary of State, plaintiff subpoenaed that report, and the trial court ordered the Secretary of State to comply with the subpoena. Defendant obtained Dr. Nau's report not for the purposes of receiving treatment but for maintaining his driving privileges. A court of competent jurisdiction ordered the Secretary of State to comply with the subpoena, and this order was not part of the order appealed to the appellate court. Plaintiff is therefore entitled to use this record, and we modify the appellate court's judgment accordingly.

¶ 38                                                    CONCLUSION

¶ 39 Pursuant to section 8-802(4) of the Code of Civil Procedure, the physician-patient privilege does not apply in any action in which the patient's physical or mental condition is "an issue." We agree with the appellate court that "an issue" for purposes of this section means placed in issue by the patient. Additionally, we urge the legislature to address section 8-802(4) and to make its intentions clear. Specifically, the legislature should clarify how something becomes "an issue" for purposes of this section, whether one party may put another party's physical or mental condition at issue, and if the rule is any different for civil and criminal cases.

¶ 40 For the above reasons, we affirm the appellate court's decision, which (1) reversed the circuit court's discovery order and (2) vacated the circuit court's contempt order. We modify the appellate court's judgment to provide that plaintiff's counsel does not have to relinquish defendant's medical records that he received from the Secretary of State. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we order plaintiff to relinquish the records obtained from defendant's medical providers in a manner that will protect defendant's privacy.

¶ 41 Appellate court judgment affirmed as modified.

¶ 42 Circuit court judgment affirmed in part and reversed in part.